UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DEVENDRA SHUKLA,

                 Plaintiff

Against -

SAT PRAKASH SHARMA,
Individually and as Director of VISHVA
SEVA ASHRAM OF NEW YORK
GEETA SHARMA, individually
and as Director of VISHVA SEVA
ASHRAM OF NEW YORK, and VISHVA
SEVA ASHRAM OF NEW YORK,
D/B/A SARVA DEV MANDIR,

                 Defendants.
--------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 23 2007 ★

BROOKLYN OFFICE

Case No:

**COMPLAINT**

**CV 07 2972**

JURY TRIAL DEMANDED

**AMON, J.**

POLLAK, M.J.

Plaintiff, by his undersigned counsel, alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters alleged below, as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Devendra Shukla is an Indian citizen who was trafficked to the United States by Defendants Sat Prakash Sharma ("Mr. Sharma" or "Defendant 1") and Geeta Sharma ("Mrs. Sharma" or "Defendant 2"), ostensibly to be a Hindu priest for the congregation of Defendant Vishva Seva Ashram of New York ("Defendant 3" or the "Ashram"). Once here, he was subjected to exploitative work conditions, received wages in violation of Federal and State Wage Laws, and was forced to work as a domestic employee against his will.

1

2.      Plaintiff seeks damages from Defendants Sat Prakash Sharma and Geeta Sharma (together "Individual Defendants"), jointly and severally, for trafficking him into the United States under false pretenses and for subjecting them to slavery-like conditions through severe psychological and emotional abuse. Plaintiff further seeks the agreed-upon pay for his services, labor and the statutory minimum payment for such labor. He also seeks damages for breach of contract and various state torts.

3.      Plaintiff seeks damages from the Ashram. Defendant Ashram was the conduit through which Individual Defendants enticed and coerced Plaintiff to come to the United States. Upon information and belief, Individual Defendants are both directors and officers of Defendant Ashram. Defendant Ashram, therefore, is responsible for the tortuous conduct of its agents, Individual Defendants Mr. and Mrs. Sharma. Such tortuous conduct was committed within the scope of their duties as directors/officers of Defendant Ashram.

4.      Plaintiff also seeks remedy and protection through the Honorable Court for being a person out of valid/legal status. Plaintiff's lack of legal status was and is due solely to the action and/or inaction of all Defendants.


## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. Further, this Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), which permits employees to bring civil actions in courts of appropriate jurisdiction to recover damages for an employer's failure to pay the minimum wage and overtime wages, and 18 U.S.C.

§ 1595, which permits civil actions for violations of the forced labor and trafficking provisions of the Victims of Trafficking and Violence Protection Act of 2000.

6.    Venue is proper in this district because Defendants situate, work, and reside in the County of Queens, New York, which falls within the venue boundaries of the Federal District Court of the Eastern District.

## THE PARTIES

7.    Plaintiff Devendra Shukla is a citizen of India who currently resides in the State of New York. Plaintiff's whereabouts are being kept confidential for fear of further harassment and reprisal from Defendants. Plaintiff was made to work for the Defendants from August 6, 2000 until approximately June 25, 2007, a continuous period of almost seven years.

8.    Upon information and belief, Defendant Sat Prakash Sharma is the President and a director or officer of Defendant Ashram, the husband of Defendant Geeta Sharma, and resides at 35-45 71st Street, Jackson Heights, NY 11374. To the best of Plaintiff's knowledge, Defendant Sat Prakash Sharma is one of only two directors or officers of Defendant Ashram.

9.    Upon information and belief, Defendant Geeta Sharma is the only other known director/officer of Defendant Ashram, the wife of Defendant Sat Prakash Sharma. Defendant Geeta Sharma also resides at 35-45 71st Street, Jackson Heights, NY 11374.

3

10.     Upon information and belief, Defendant Ashram is a 501(c)(3) non-profit organization duly organized as per the laws of the State of New York. The Ashram is located at 104-38 Corona Avenue, Corona NY 11368.


## INTRODUCTION

### STATUTORY BACKGROUND FOR THE
### TRAFFICKING IN PERSONS AND FORCED LABOR CLAIM

11.     Plaintiff is a survivor of forced labor and human trafficking as defined by the Victims of Trafficking and Violence Protection Act of 2000 (TVPA), Pub. L. No. 106-386, 114 Stat. 1464 (2000), a federal statute passed by Congress to prevent and protect against modern-day slavery and the trafficking of human beings and as a means to punish their abusers.

12.     In 2003, the United States Department of State estimated that 18,000 to 20,000 individuals are trafficked into this country each year.


## FACTUAL ALLEGATIONS

13.     Plaintiff is an individual from a family of very modest means in rural India. During the period Plaintiff was employed by Individual Defendants, he bore significant financial responsibilities to provide necessary support to his then-newborn child, wife, parents and/or extended family.

14.     Plaintiff Devendra Shukla was born in 1975 in Faizabad, State of Uttar Pradesh, India. Plaintiff was educated as a Hindu priest solely in the Hindi and Sanskrit languages. During the

period of his employment by the Individual Defendants, Plaintiff spoke only a few words of English. Plaintiff could not read, write, or converse in English.

15.     On or about January 15, 2000, Plaintiff was contacted by Mr. Satya Dev Sharma, the elder brother of Defendant 1, who, on behalf of the Individual Defendants, offered Plaintiff employment as the priest of Defendant Ashram. At this point, Defendant 1's brother stated that the enumerated salary would be between $15 - $20 per hour. Moreover, Plaintiff was told that he would be provided with a comfortable living arrangement, a stipend for food, and reasonable working hours. The brother also intimated that Individual Defendants would also sponsor Plaintiff for permanent residence in the United States.

16.     Persuaded by the enticements of the offer given on behalf of Individual Defendants and Defendant Ashram, Plaintiff agreed to be a priest for the congregants at Defendant Ashram.

17.     On or about July 29, 2000, Satya Dev Sharma accompanied Plaintiff to the United States Embassy in New Delhi, India. Once there, Satya Dev Sharma filled out the proper immigration forms for an R-1 visa for Plaintiff, which is given solely to religious workers. Upon information and belief, the application submitted to the Immigration Authorities must have stated that Plaintiff would receive hourly pay equaling at least $18.63, as that was the prevailing wage required for an R-1 visa for a Level 2 religious worker.

18.     On or about August 6, 2000, Plaintiff came to the United States, was taken to Defendant Ashram, and began administering to his congregation, as per his legal, spiritual, and moral duty as a Hindu priest.

19.     Promptly upon his arrival to the United States, Individual Defendants asked for Plaintiff's passport, stating that they needed this document for certain administrative and immigration matters. Individual Defendants further stated that Plaintiff's passport would be returned to him within a few days.

## FORCED LABOR AND EXPLOITATION IN THE UNITED STATES

20.     At all relevant times, Plaintiff resided in a dilapidated converted bathroom/storage space located in Defendant Ashram.

21.     Individual Defendants forced Plaintiff to work for little to no pay in violation of United States law and compelled his work through mental and legal coercion, including psychological abuse and deprivation of his legal documents.

22.     Specifically, Individual Defendants deprived Plaintiff of his passport. Individual Defendants illegally confiscated Plaintiff's passport shortly after his arrival in the United. Plaintiff's passport was only recently returned, after a period of almost seven years, through the combined efforts of numerous congregants of Defendant Ashram, who contacted the New York Police Department ("NYPD") on Plaintiff's behalf. Defendants only returned Plaintiff's passport after the active involvement of the NYPD.

23.     Upon receipt of his passport after seven years, Plaintiff was dismayed to learn that Defendants never once filed for or obtained a renewal R-1 religious worker visa for Plaintiff. Consequently Plaintiff is currently out of status through the active and malicious machinations of Individual Defendants and by no fault of his own.

6

## WORK RESPONSIBILITIES

24.    Individual Defendants forced Plaintiff to perform work virtually every waking hour of the day.

25.    Plaintiff's workday would begin at 6 a.m., when morning devotional prayers were held, and would often conclude after the 10 p.m. devotional prayers. Plaintiff's responsibilities included, *inter alia*, ministering to the congregation, leading all devotional prayers at both the Ashram and in devotees' homes, coordinating the weekly gatherings of the congregation, and cleaning the Ashram and its environs.

26.    On numerous religious holy days, programs and religious festivals would continue throughout the night until morning. Plaintiff would remain at his post throughout the night, as he was the only religious worker at Defendant Ashram.

27.    This schedule was maintained essentially every day of the year beginning the day Plaintiff arrived in the United States. Plaintiff's repeated requests for a vacation or time away from Defendant Ashram were denied under the excuse that there was no one else who could manage the Ashram in Plaintiff's absence.

28.    Upon information and belief, Individual Defendants and/or Defendant Ashram own the apartments located above Defendant Ashram. Soon after his arrival in the United States, Individual Defendants informed Plaintiff that he would provide janitorial and maintenance services for the tenants of those apartments. Unaware that he was not required to perform such services, Plaintiff nonetheless painted said apartments, performed janitorial services upon request, and cleaned the common areas.

29.     In addition to his religious and ministerial duties, Individual Defendants would often take Plaintiff to their private residence. Once there, Plaintiff was required to clean and dust the house from attic to basement, weed and clean the garden, fix broken fixtures, assemble and move furniture, and provide general janitorial and maintenance services for Individual Defendants' private residence.

## PSYCHOLOGICAL ABUSE AND ENFORCED ISOLATION

30.     Individual Defendants also coerced Plaintiff's labor through a practice and pattern of psychological abuse, isolation, and exploitation.

31.     Individual Defendants required Plaintiff to work at a strenuous pace for extremely long hours over a considerable period of time. This pace harmed Plaintiff's physical and mental health.

32.     Individual Defendants treated Plaintiff in a demeaning and abusive manner. Whenever Plaintiff stated that he wished to learn English or the computer so he could more effectively relate to his congregation, Individual Defendants would say that his role in the United States was merely as a servant of Defendant Ashram, and that Individual Defendants would translate whatever Plaintiff wished to say.

33.     At various points during his employment with Defendants, Plaintiff expressed a desire to see his wife and child, who was barely two months old when Plaintiff left India for the United States. As a response, Individual Defendants would state that there were difficulties concerning Plaintiff's immigrant status and Plaintiff's passport. On numerous occasions, Individual Defendants threatened Plaintiff with seizure and imprisonment by Immigration Authorities

should he ever leave the confines of Defendant Ashram without the express permission of Individual Defendants.

34.     In direct violation of the promises and inducements made to Plaintiff, Individual Defendants failed to provide Plaintiff with a habitable living space. Instead, Plaintiff was consigned to living in a converted bathroom/storage space within the confines of Defendant Ashram. Individual Defendants also refused to provide Plaintiff with any visible means of obtaining food. Consequently, Plaintiff was forced to survive on the donations of food left as offerings by the Ashram devotees and congregants.

**WAGES**

35.     Plaintiff never received his duly offered and promised wages at any time from Defendants.

36.     Intermittently and without discernible pattern or reliability, Individual Defendants gave Plaintiff nominal sums for "spending money." Such sums never exceeding $150 for any one month. Plaintiff used these monies to supplement his diet and pay for the personal effects congregants bought for him.

37.     Often after presiding over a prayer meeting or special religious event at a devotee's house, Plaintiff would receive both payment to Defendant Ashram for providing Plaintiff's services and a much lesser amount constituting an honorarium to Plaintiff himself.

38.     After every such service, Plaintiff would note the amount received and deposit the monies for Defendant Ashram into the locked "donations" box located inside Defendant Ashram.

Only Individual Defendants had keys to the "donations" box. Every week, Individual Defendants would take the "donations" box to their personal residence and empty its contents. To date, Plaintiff remains unaware of what happens to any of the "donations" box funds.

39.    Moreover, on numerous occasions Individual Defendants inquired whether Plaintiff received his honorarium. Whenever Plaintiff replied in the affirmative, Individual Defendants ordered Plaintiff to place his honorarium into the "donations" box as well.

40.    Contrary to their representations to the United States Embassy in India and to Plaintiff, Individual Defendants failed to remit proper payments to either Plaintiff or his family in India. Further, Individual Defendants often failed to send these payments on a timely basis, and altogether failed to pay for Plaintiff's last 3 months of work. In exchange for almost seven years of continuous service, Defendants remitted 949,400 rupees, or the equivalent of approximately $21,100, to Plaintiff's family in India

41.    Individual Defendants' hiring and employment of Plaintiff was a commercial activity.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### TRAFFICKING IN PERSONS VIOLATION OF THE

### TRAFFICKING VICTIMS PROTECTION ACT OF 2000

### (AGAINST ALL DEFENDANTS)

42.    Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though fully set forth herein.

43.     Individual Defendants knowingly recruited, transported, and harbored the Plaintiff so as to obtain his labor and services by threats of serious harm, scheme or pattern of behavior and/or abuse of legal process within the meaning of the Trafficking provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1590.

44.     Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

45.     As a proximate result of Individual Defendants' conduct, Plaintiff has suffered damage.

46.     Defendant Ashram knowingly played a significant role in and practically and materially assisted Individual Defendants' trafficking of Plaintiffs.

47.     At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

48.     Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

11

49.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF

## FORCED LABOR VIOLATION OF THE TRAFFICKING

## VICTIMS PROTECTION ACT OF 2000

## (AGAINST ALL DEFENDANTS)

50.    Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

51.    Individual Defendants knowingly obtained Plaintiff's labor and services by threats of serious harm, scheme, or pattern of behavior and/or abuse of legal process within the meaning of the Forced Labor provision of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

52.    Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

53.    As a proximate result of Individual Defendants' conduct, Plaintiff has suffered damages.

54.    Defendant Ashram knowingly played a significant role in and practically and materially assisted Individual Defendants in subjecting Plaintiff to conditions of forced labor.

55.    At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through

12

which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

56.     Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

57.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## THIRD CLAIM FOR RELIEF
## INVOLUNTARY SERVITUDE (PURSUANT TO THE THIRTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 18 U.S.C. § 1584)
### (AGAINST ALL DEFENDANTS)

58.     Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

59.     The Thirteenth Amendment of the United States Constitution and its enforcing statute, 18 U.S.C. § 1584, prohibit involuntary servitude in private conduct.

60.     Individual Defendants knowingly forced Plaintiff to work through threats of psychological and legal coercion. Individual Defendants forced Plaintiff to work for them under threats of psychological and legal coercion manifested in the confiscation of his passport and threats of harm that would result should Plaintiff leave Defendant Ashram without the permission of Individual Defendants.

61.     Through the conduct of Individual Defendants alleged herein, acting individually and in concert, Individual Defendants caused Plaintiff to have and to believe he had no way of avoiding continued service or confinement in violation of the Thirteenth Amendment's prohibition on involuntary servitude.

62.     As a proximate result of Individual Defendants' conduct, Plaintiff has suffered damage.

63.     At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States. Moreover, Plaintiff was made to believe he could not leave the confines of Defendant Ashram without the express permission of Individual Defendants.

64.     Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

65.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## FOURTH CLAM FOR RELIEF

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

### (AGAINST ALL DEFENDANTS)

14

66.     Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

67.     Defendants employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

68.     Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and United States Department of Labor regulations, Defendants were obligated to pay Plaintiff at least the minimum wage of $18.63 for every hour in which Plaintiff was not free to leave his employers' premises. Such a sum was the minimum amount for which the United States Government would grant a visa for religious workers in 2001, the earliest year for which data on wages is readily available.

69.     Defendants willfully refused to pay Plaintiff his statutorily established wages, in violation of 29 U.S.C. §§206(a), (f) and Department of Labor regulations.

70.     As a proximate result of Defendants' conduct, Plaintiff has suffered damage.

71.     Plaintiff is entitled to recover the amount of unpaid minimum wages due and an equal amount as liquidated damages, a total amount not less than $1,249,189.41. This amount is the minimum wage for religious workers ($18.63) times the number of regular hours worked over seven years (12,651 hours) plus the overtime wage ($27.95) times the number of overtime hours worked over seven years (13,916). The sum ($624,594.70) is doubled for liquidated damages, pursuant to federal statute to arrive at $1,249,189.41. Overtime hours were calculated using 12 hour workdays for a seven day workweek.

72.   Plaintiff is also entitled to recover attorneys' fees and costs of the action, pursuant to 29 U.S.C. § 216(b) and Department of Labor regulations, in addition to declaratory relief.

## FIFTH CLAIM

## BREACH OF CONTRACT

73.   Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

74.   On or about January 15, 2000, Plaintiff and agents/relatives of Individual Defendants entered into a verbal contract providing, *inter alia*, that Plaintiff would work as a Hindu priest and administer to the congregation of Defendant Ashram for $18.63 per hour. The immigration application filed by Defendants for Plaintiff's R-1 religious worker visa provides *prima facie* evidence of this contract.

75.   Plaintiff fully performed his obligations under the contract by faithfully ministering to the spiritual and emotional needs of Defendant Ashram's congregation.

76.   Defendants breached the contract by failing to pay Plaintiff for all the work he performed and by forcing to Plaintiff to work more than twelve hours per day, seven days a week. Individual Defendants also breached their contract with Plaintiff by depriving him of his passport.

77.   As a proximate result of Defendants' conduct, Plaintiff has suffered damages.

78.   Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## SIXTH CAUSE OF ACTION

## QUANTUM MERUIT

79.     Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

80.     Plaintiff has conferred significant benefits upon Defendants by performing the above-mentioned labor for them.

81.     Defendants have not tendered payments to Plaintiff for these services.

82.     Defendants are liable under quantum meruit for the services that Plaintiff provided.

83.     As a proximate result of Defendants' conduct, Plaintiff has suffered damages.

84.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## SEVENTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

85.     Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

86.     Defendants have been unjustly enriched because they failed to pay Plaintiff the value of his labor.

87.     As a proximate result of Defendants' conduct, Plaintiff has suffered damages.

88.   It would be inequitable for Defendants to be permitted to retain such benefits without paying Plaintiff the value of the benefit conferred.

89.   Plaintiff is entitled to restitution and judgment against Defendants for an amount to be proven at trial, including attorneys' fees and the cost of this action.

## EIGHTH CLAIM FOR RELIEF

## FRAUD AND CONSTRUCTIVE FRAUD

90.   Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

91.   Defendants, through their agents/relatives, intentionally, knowingly, negligently, or innocently misrepresented to Plaintiff the conditions of Plaintiff's employment in the United States in order to induce him to come to the United States.

92.   Defendants, and through their agents/relatives, deceived Plaintiff with the above-mentioned misrepresentations, including the promise of specified wages and proper working conditions in order to entice Plaintiff to come to the United States and to force him to work as a Priest for Defendant Ashram's congregation.

93.   Defendants induced Plaintiff to come to the United States knowing of and intending that their misrepresentations would induce Plaintiff to travel to the United States in order to receive the promised employment.

94.    Plaintiff did in fact rely on Defendants' misrepresentations to his detriment and as a result was forced to work as a Priest at Defendant Ashram, thereby enduring psychological and emotional abuse that accompanied this employment at great economic, physical, and emotional detriment.

95.    At the time that Defendants or their agents/relatives made the foregoing representations and promises to Plaintiff, they had no intention of carrying out such representations or promises.

96.    As a direct and proximate result of these actions, Plaintiff has sustained damages.

97.    At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

98.    Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

99.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## NINTH CLAIM FOR RELIEF

## FALSE IMPRISONMENT

100.    Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

101.    Individual Defendants knowingly and intentionally restrained Plaintiff through psychological and legal threats and coercion so as to deprive Plaintiff of his liberty and force Plaintiff to continue laboring for them.

102.    Plaintiff reasonably believed that he was confined within the boundaries of Defendant Ashram as a result of Individual Defendants' coercion and use of psychological and legal threats of arrest, detention, and deportation.

103.    As a proximate result of Individual Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

104.    Individual Defendants committed these acts maliciously, with the wrongful intention of causing harm to Plaintiff and in conscious disregard of his rights. Such conscious disregard for Plaintiff's rights is clearly evident by their malicious act of not returning Plaintiff's passport to him, and their willful and/or negligent conduct of not renewing Plaintiff's R-1 religious worker visa.

105.    At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

106.    Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

107.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## TENTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

108.    Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

109.    Individual Defendants acted with an intent to cause Plaintiff emotional distress and/or a reckless disregard for the high probability that emotional distress would occur by, among other things, denying Plaintiff contact with the world outside Defendant Ashram or any outside contact not in the presence of Individual Defendants, telling him he would be arrested, put into detention, and deported and subjecting him to abhorrent working conditions.

110.    Individual Defendants' conduct was extreme and outrageous in nature and intolerable in a civilized society.

111.    As a proximate result of Individual Defendants' conduct, Plaintiff has suffered and continues to suffer severe mental stress, emotional injuries, and economic loss.

21

112.    Individual Defendants committed these actions maliciously and oppressively, with the wrongful intention of causing harm to Plaintiff, with the motive amounting to malice and in conscious disregard of Plaintiff's rights.

113.    At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

114.    Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

115.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## TWELFTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

116.    Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

117.    Individual Defendants negligently engaged in outrageous conduct towards Plaintiff and caused Plaintiff to suffer severe emotional distress.

22

118.   Individual Defendants owed a duty to Plaintiff because it was foreseeable that forcing a Priest to work up to eighteen hours a day, with minimal or no pay, isolated from the outside world, and subjected to psychological and legal threats of arrest, detention, and deportation, would cause Plaintiff to suffer severe emotional distress.

119.   Individual Defendants breached their duty to the Plaintiff by negligently engaging in the conduct described herein.

120.   As a proximate result of said conduct, Plaintiff has suffered ad continues to suffer extreme mental distress, humiliation and emotional injuries.

121.   At the time Individual Defendants engaged in the tortuous conduct described herein, Individual Defendants were Directors and/or Officers of Defendant Ashram. Defendant Ashram, through its Directors and its status as a non-profit religious organization, was the vehicle through which Individual Directors enticed and induced Plaintiff into accepting employment in the United States.

122.   Plaintiff's exploitation occurred in the ordinary course of Individual Defendants' supervision of Plaintiff and with the intent of further Defendant Ashram's interests. Defendant Ashram is therefore also vicariously liable for Individual Defendants' conduct under the doctrine of respondeat superior.

123.   Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF

## CIVIL CONSPIRACY

124.   Plaintiff re-alleges and incorporates the averments of the foregoing paragraphs as though set forth fully herein.

125.   Defendants agreed to engage in the acts detailed above to accomplish an unlawful purpose and/or to accomplish acts by unlawful means.

126.   Through their concerted actions, Defendants assisted one another in the execution of those acts that resulted in the unlawful treatment f Plaintiffs, described above.

127.   As a proximate result of Defendants' agreement to engage in the unlawful acts described above, Plaintiff has suffered and continues to suffer severe mental distress, emotional injuries, humiliation, and economic loss.

128.   Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award a judgment in his favor with the following reliefs:

1.  For the First, Second and Third Claims for relief, compensatory and punitive damages, attorneys' fees, and any such and other reliefs the court deems just and proper;

24

2.  For the Fourth Claim for Relief, compensatory damages in the amount of $1,249,189.70, punitive damages, attorneys' fees, and any such and other reliefs the court deems just and proper;

3.  For the Fifth to the Twelfth remaining Claims for Relief, compensatory damages, punitive damages, attorneys' fees, and any such and other reliefs the court deems just and proper;

4.  A direction by this Honorable Court to the United States Customs and Immigration Service to grant Plaintiff a renewal of his R-1 religious worker visa on compelling humanitarian grounds;

5.  Any such and other relief the court deems just and proper.

Dated: New York, NY
   July 20, 2007

         LAW OFFICES OF SANJAY CHAUBEY

       By:

         Sanjay Chaubey, Esq. (SC - 3241)
         *Attorney for Plaintiff*
         Empire State Building
         350 5th Avenue, Suite 5013
         New York, NY 10018
         Tel: (212) 563-3223
         Fax: (212) 563-4534