UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

Devendra Shukla,

*Plaintiff,*

CV 07-2972
(Hon. Carol Amon, J.)

-against-

Sat Prakash Sharma, individually and as director of Vishva Seva Ashram of New York, Geeta Sharma, individually and as director of Vishva Seva Ashram of New York, Vishva Seva Ashram of New York, d/b/a Sarva Dev Mandir
*Defendants.*
-----------------------------------------------------------------------x

DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Dated: New York, New York
June 7, 2010

**Chittur & Associates, P.C.**
286 Madison Avenue, Suite 1100
New York, NY 10017
Tel. (212) 370-0447
Attorneys for Defendants Sat Prakash Sharma, Geeta Sharma, and Vishva Seva Ashram d/b/a Sarva Dev Mandir

TABLE OF CONTENTS

REQUEST NO. 1
BURDEN OF PROOF. . . . . . . . . . . . 1

REQUEST NO. 2
CREDIBILITY GENERALLY. . . . . . . . . . . . 2

REQUEST NO. 3
PRIOR INCONSISTENT STATEMENTS. . . . . . . . . . . . 4

REQUEST NO. 4
TESTIMONY OF A PERJURER. . . . . . . . . . . . 5

REQUEST NO. 5
CONSIDERATION OF EACH DEFENDANT SEPARATELY. . . . . . . . . . . . 6

REQUEST NO. 6
ADVERSE INFERENCE FROM PLAINTIFF'S SUPPRESSION
OR DESTRUCTION OF EVIDENCE.. . . . . . . . . . . . 7

REQUEST NO. 7
ADVERSE INFERENCE FROM PLAINTIFF'S
FAILURE TO PRODUCE AVAILABLE EVIDENCE. . . . . . . . . . . . 10

REQUEST NO. 8
ELEMENTS OF THE CLAIM OF FORCED LABOR. . . . . . . . . . . . 13

REQUEST NO. 9
ELEMENTS OF THE CLAIM OF TRAFFICKING, PEONAGE, SLAVERY OR
INVOLUNTARY SERVITUDE. . . . . . . . . . . . 18

REQUEST NO. 10
DAMAGES FOR FORCED LABOR.. . . . . . . . . . . . 23

REQUEST NO. 11
DAMAGES FOR TRAFFICKING, PEONAGE, SLAVERY OR
INVOLUNTARY SERVITUDE. . . . . . . . . . . . 24

REQUEST NO. 12
LIBEL AND SLANDER. . . . . . . . . . . . 25

REQUEST NO. 13
CONVERSION. . . . . . . . . . . . 28

REQUEST NO. 14
BREACH OF CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

REQUEST NO. 15
DAMAGES FOR CONVERSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

REQUEST NO. 16
DAMAGES FOR BREACH OF CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

REQUEST NO. 17
DAMAGES FOR LIBEL AND SLANDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

REQUEST NO. 18
PUNITIVE DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

REQUEST NO. 1

BURDEN OF PROOF

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

In this case, the Plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the Plaintiff's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendant as to that claim.[1]

[1]*Federal Jury Practice and Instructions*, § 101.41

REQUEST NO. 2

CREDIBILITY GENERALLY

You are the ultimate authority as to what facts have or have not been proven in this case. In exercising your authority in this regard, perhaps the single most important thing you must consider is the credibility of the witnesses who appeared before you.

How do you determine the accuracy or reliability of any witness' testimony? You do so in the exact same way that in your daily life you determine to what extent you can rely on something that is being or has been said to you. Consider each witness' bias, prejudice, hostility, interest and partisanship in the prosecution or defense of the case and his demeanor while on the stand. For example, how in general does the speaker impress you? Does he or she seem to be trying to give you information or trying to persuade you of something? How does his or her testimony on cross examination compare with what was said on direct? Did his or her attitude seem materially to change between direct and cross examination? Did he or she appear certain about things that in your judgment he was in no position to have certain knowledge of? Or, on the other hand, was he or she wholly at ease in recognizing uncertainty where it existed? Also, you might consider the extent to which any particular testimony fits in with all the other evidence in the case, and whether the witness is reporting what he personally saw or heard. All the things which, it seems to me, would influence you in your daily lives in appraising the reliability of things that are said to you, may influence you in appraising the reliability of the testimony presented here.

The law lays down certain guidelines for assisting you. You may, as I have indicated, consider the interest any witness may have in the outcome of the action. Also, the law makes a

specific provision that you may, if you wish, totally disregard a witness' entire testimony if you find that he had deliberately lied to you as a matter of importance in the litigation.[2]

[2]Adapted from the instruction given in *United States v. Coonan*, No. S 87 Cr. 249 (S.D.N.Y. 1988) (Knapp, J.).

REQUEST NO. 3

PRIOR INCONSISTENT STATEMENTS

If you find that any witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency that appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight should be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.[3]

[3]Instruction given in *United States v. Coonan*, No. S 87 Cr. 249 (S.D.N.Y. 1988) (Knapp, J.).

REQUEST NO. 4

TESTIMONY OF A PERJURER

I instruct you that if a witness is shown to have lied about any material matter in this trial, you have the right to conclude that the witness also lied about other matters. You may either disregard all of that witness' testimony, or you may accept whatever part of it you think deserves to be believed.[4]

[4]Adapted from Sand, Siffert, Loughlin and Reiss, *Modern Federal Jury Instructions*, Instructions 7-17 and 7-18 (2006).

REQUEST NO. 5

CONSIDERATION OF EACH DEFENDANT SEPARATELY

The complaint names Mr. Sharma, Mrs. Geeta Sharma, and the Temple as Defendants, who are on trial together. In reaching your verdict, however, you must consider each of them separately. Your verdict as to each Defendant must be determined separately with respect to him or her, solely on the evidence, or lack of evidence, presented against him or her or, in the case of the Temple, it, without regard to the guilt or innocence of the other Defendant on trial or anyone else.[5]

---

[5] Adapted from Sand, Siffert, Loughlin and Reiss, *Modern Federal Jury Instructions,* Instructions 3-5 and 3-6 (2006).

REQUEST NO. 6

ADVERSE INFERENCE FROM PLAINTIFF'S SUPPRESSION

OR DESTRUCTION OF EVIDENCE

Here, the Court has found that the Plaintiff has willfully suppressed, hid, or destroyed evidence in order to prevent its being presented in this trial, and that you should make a "spoliation inference." I therefore instruct you to infer that the destroyed evidence would have been unfavorable to the Plaintiff.[6]

Therefore, you should infer that had Plaintiff produced his laptop computer, the data, documents and emails that would have been contained therein would have established that

a. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff with food, clothing, shelter, $500 per month, and tips from devotees as per their contract;
b. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff, over and above the Temple's contract with him, with cable television, Hindi movies, Hindu epics on dozens of videocassettes, custom-tailored clothing and other valuable gifts;
c. Plaintiff routinely went to devotees' residences and/or business places to conduct prayers or other religious ceremonies, for which he was directly paid by such devotees regularly, and which receipts he never reported to the Temple;
d. Mr. Sharma, Mrs. Sharma and the Temple took Plaintiff to medical professionals whenever he requested;
e. Mr. Sharma and Mrs. Sharma invited Plaintiff home for dinner regularly, and treated Plaintiff with respect normally accorded to a priest in a temple;
f. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff carried on a side business on Temple property and using Temple resources without the Temple's consent, which business included, without limitation, dispensing advice to third parties on astrology, casting horoscopes for third parties, and counseling third parties on family matters and Hindu rituals;
g. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff collected tens of thousands of dollars through his side-business and effected money transfers of such receipts through Western Union and Money Gram;
h. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never kept Plaintiff as a slave;
i. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never forced Plaintiff to work 16-hour days;

---

[6] *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir.1994).

j. throughout the time that Plaintiff was at the Temple, the Plaintiff left and returned to the Temple at will, and Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple never forbade Plaintiff from leaving the Temple;

k. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never made Plaintiff perform domestic work at the residence of the Mr. Sharma and Mrs. Geeta Sharma;

l. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never threatened Plaintiff physically or emotionally;

m. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never took Plaintiff's passport from him at any time against his will, and/or never refused to return it to him when he asked;

n. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never subjected Plaintiff to exploitative work conditions;

o. Plaintiff took for his own use and possession, and without consent of Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple, eleven holy books, five gold statues of Hindu deities, three gold chains, and two gold necklaces;

p. Over and above the tips that he received from devotees, Plaintiff also pocketed donations to the Temple which belonged to the Temple, and without the consent of the Temple for such pocketing.

Further, the Plaintiff here is found to have knowingly destroyed, after commencing this lawsuit, written correspondence. From this, you should infer that had Plaintiff not destroyed these letters, the documents would have established that

a. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff with food, clothing, shelter, $500 per month, and tips from devotees as per their contract;

b. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff, over and above the Temple's contract with him, with cable television, Hindi movies, Hindu epics on dozens of videocassettes, custom-tailored clothing and other valuable gifts;

c. Plaintiff routinely went to devotees' residences and/or business places to conduct prayers or other religious ceremonies, for which he was directly paid by such devotees regularly, and which receipts he never reported to the Temple;

d. Mr. Sharma, Mrs. Sharma and the Temple took Plaintiff to medical professionals whenever he requested;

e. Mr. Sharma and Mrs. Sharma invited Plaintiff home for dinner regularly, and treated Plaintiff with respect normally accorded to a priest in a temple;

f. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff carried on a side business on Temple property and using Temple resources without the Temple's consent, which business included, without limitation, dispensing advice to third parties on astrology, casting horoscopes for third parties, and counseling third parties on family matters and Hindu rituals;

g. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff

collected tens of thousands of dollars through his side-business and effected money transfers of such receipts through Western Union and Money Gram;

h. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never kept Plaintiff as a slave;

i. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never forced Plaintiff to work 16-hour days;

j. throughout the time that Plaintiff was at the Temple, the Plaintiff left and returned to the Temple at will, and Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple never forbade Plaintiff from leaving the Temple;

k. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never made Plaintiff perform domestic work at the residence of the Mr. Sharma and Mrs. Geeta Sharma;

l. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never threatened Plaintiff physically or emotionally;

m. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never took Plaintiff's passport from him at any time against his will, and/or never refused to return it to him when he asked;

n. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never subjected Plaintiff to exploitative work conditions;

o. Plaintiff took for his own use and possession, and without consent of Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple, eleven holy books, five gold statues of Hindu deities, three gold chains, and two gold necklaces;

p. Over and above the tips that he received from devotees, Plaintiff also pocketed donations to the Temple which belonged to the Temple, and without the consent of the Temple for such pocketing.

You should also infer that Plaintiff has made these false allegations, despite knowing their falsity, in order to allow Plaintiff to remain in this country and obtain legal immigration status under the federal anti-trafficking statute.

REQUEST NO. 7

ADVERSE INFERENCE FROM PLAINTIFF'S

FAILURE TO PRODUCE AVAILABLE EVIDENCE

Here, the Court has found that the Plaintiff has failed to produce evidence that is under his control and reasonably available to him and not reasonably available to Mr. Sharma, Mrs. Sharma, and the Temple. I instruct you that you should infer that the evidence is unfavorable to the Plaintiff.[7]

Therefore, you should infer that had Plaintiff produced his laptop computer, the data, documents and emails that would have been contained therein would have established that

a. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff with food, clothing, shelter, $500 per month, and tips from devotees as per their contract;
b. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff, over and above the Temple's contract with him, with cable television, Hindi movies, Hindu epics on dozens of videocassettes, custom-tailored clothing and other valuable gifts;
c. Plaintiff routinely went to devotees' residences and/or business places to conduct prayers or other religious ceremonies, for which he was directly paid by such devotees regularly, and which receipts he never reported to the Temple;
d. Mr. Sharma, Mrs. Sharma and the Temple took Plaintiff to medical professionals whenever he requested;
e. Mr. Sharma and Mrs. Sharma invited Plaintiff home for dinner regularly, and treated Plaintiff with respect normally accorded to a priest in a temple;
f. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff carried on a side business on Temple property and using Temple resources without the Temple's consent, which business included, without limitation, dispensing advice to third parties on astrology, casting horoscopes for third parties, and counseling third parties on family matters and Hindu rituals;
g. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff collected tens of thousands of dollars through his side-business and effected money transfers of such receipts through Western Union and Money Gram;
h. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never kept Plaintiff as a slave;
i. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never forced Plaintiff to work 16-hour days;

---

[7] *Federal Jury Practice and Instructions*, §104.26

j. throughout the time that Plaintiff was at the Temple, the Plaintiff left and returned to the Temple at will, and Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple never forbade Plaintiff from leaving the Temple;

k. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never made Plaintiff perform domestic work at the residence of the Mr. Sharma and Mrs. Geeta Sharma;

l. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never threatened Plaintiff physically or emotionally;

m. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never took Plaintiff's passport from him at any time against his will, and/or never refused to return it to him when he asked;

n. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never subjected Plaintiff to exploitative work conditions;

o. Plaintiff took for his own use and possession, and without consent of Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple, eleven holy books, five gold statues of Hindu deities, three gold chains, and two gold necklaces;

p. Over and above the tips that he received from devotees, Plaintiff also pocketed donations to the Temple which belonged to the Temple, and without the consent of the Temple for such pocketing.

Further, the Plaintiff here is found to have knowingly destroyed, after commencing this lawsuit, written correspondence. From this, you should infer that had Plaintiff not destroyed these letters, the documents would have established that

a. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff with food, clothing, shelter, $500 per month, and tips from devotees as per their contract;

b. Mr. Sharma, Mrs. Sharma and the Temple provided the Plaintiff, over and above the Temple's contract with him, with cable television, Hindi movies, Hindu epics on dozens of videocassettes, custom-tailored clothing and other valuable gifts;

c. Plaintiff routinely went to devotees' residences and/or business places to conduct prayers or other religious ceremonies, for which he was directly paid by such devotees regularly, and which receipts he never reported to the Temple;

d. Mr. Sharma, Mrs. Sharma and the Temple took Plaintiff to medical professionals whenever he requested;

e. Mr. Sharma and Mrs. Sharma invited Plaintiff home for dinner regularly, and treated Plaintiff with respect normally accorded to a priest in a temple;

f. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff carried on a side business on Temple property and using Temple resources without the Temple's consent, which business included, without limitation, dispensing advice to third parties on astrology, casting horoscopes for third parties, and counseling third parties on family matters and Hindu rituals;

g. Unknown to the Mr. Sharma, Mrs. Sharma, and/or the Temple, the Plaintiff

collected tens of thousands of dollars through his side-business and effected money transfers of such receipts through Western Union and Money Gram;

h. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never kept Plaintiff as a slave;

i. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never forced Plaintiff to work 16-hour days;

j. throughout the time that Plaintiff was at the Temple, the Plaintiff left and returned to the Temple at will, and Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple never forbade Plaintiff from leaving the Temple;

k. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never made Plaintiff perform domestic work at the residence of the Mr. Sharma and Mrs. Geeta Sharma;

l. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never threatened Plaintiff physically or emotionally;

m. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never took Plaintiff's passport from him at any time against his will, and/or never refused to return it to him when he asked;

n. Mr. Sharma, Mrs. Geeta Sharma, and the Temple never subjected Plaintiff to exploitative work conditions;

o. Plaintiff took for his own use and possession, and without consent of Mr. Sharma, Mrs. Geeta Sharma, and/or the Temple, eleven holy books, five gold statues of Hindu deities, three gold chains, and two gold necklaces;

p. Over and above the tips that he received from devotees, Plaintiff also pocketed donations to the Temple which belonged to the Temple, and without the consent of the Temple for such pocketing.

You should also infer that Plaintiff has made these false allegations, despite knowing of their falsity, in order to remain in this country and obtain legal immigration status under the federal anti-trafficking statute which Plaintiff would not otherwise be entitled to.

REQUEST NO. 8

ELEMENTS OF THE CLAIM OF FORCED LABOR

Plaintiff asserts that Mr. & Mrs. Sharma, and the Temple, violated Title 18, United States Code, Section 1589. In relevant part, Section 1589 provides that:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

18 U.S.C. §1589.

To find each of the Mr. Sharma, Mrs. Geeta Sharma, and the Temple liable under this provision, you must find that the Plaintiff has proven each of the following elements:

First, that Mr. Sharma, Mrs. Sharma, and/or the Temple each obtained the labor or services of Plaintiff;

Second, that Mr. Sharma, Mrs. Sharma, and/or the Temple did so through one of the following prohibited means: (a) through threats of serious harm to, or physical restraint against, Plaintiff or or any other person; or (b) through a scheme, plan or pattern intended to cause the Plaintiff to believe that nonperformance would result in serious harm to, or physical restraint against, that person or any other person. The Plaintiff must prove that the type of abuse he suffered was so "extreme, offensive and contrary to fundamental rights as to distinguish it from

the type of conduct that ordinarily gives rise to violations of labor and employment laws;"[8] and

Third, that Mr. Sharma, Mrs. Sharma, and/or the Temple acted knowingly.

I will now explain each of these three elements in greater detail.

1. First Element: Obtaining Labor or Services

In considering the first element, you must decide whether Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff. The term "obtain" means to gain, acquire or attain and you are to apply that definition here. If you find that the Plaintiff has proven that Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff, then the first element has been satisfied.

2. Second Element: Prohibited Means of Obtaining Labor or Services

If you find that Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff, then you must determine whether each Mr. Sharma, Mrs. Geeta Sharma, and the Temple did so through one of the two prohibited means, that is, either (a) through threats of serious harm to, or physical restraint against, Plaintiff or some other person; or (b) through a scheme, plan or pattern intended to cause the person to believe that serious harm to, or physical restraint against, Plaintiff or some other person would result if he did not perform the labor or services required of him. In order to find that the second element has been satisfied, you must find that one of the prohibited means I just mentioned was used to obtain Plaintiff's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element has been satisfied.

[8] Report and Recommendation of Magistrate Judge Pollak, at 37.

The term "serious harm" as used in this statute includes both physical and non-physical types of harm. Therefore a threat of serious harm need not involve any threat of physical violence. However, the threats must be improper and must involve dire consequences that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person in the same situation to provide, or continue to provide, labor or services.[9] It is not a threat of serious harm, however, to warm someone of adverse consequences, such as denial of future employment or withholding of wages or other monetary compensation.[10] You must draw a line between improper threats or coercion and permissible warnings of adverse, but lawful consequences. In considering whether a threat of harm is sufficient to compel or coerce the victim's services, you may consider the totality of Mr. Sharma's, Mrs. Sharma's, and/or the Temple's conduct, as well as any aspects of the Plaintiff's age, background, or circumstances that were known to Mr. Sharma, Mrs. Sharma, and/or the Temple and that made Plaintiff especially vulnerable to pressure.

The term "physical restraint" means forcible restraint such as being tied, bound or locked up.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. A "scheme" is a plan or program of action, especially a crafty or secret one. A "plan" is a method for achieving an end or a detailed formulation of a program of action. A "pattern" is a form or

---

[9] *United States v. Bradley,* 390 F.3d 145, 150 (1st Cir. 2004) (citing Congressional hearing report, threats of "serious harm" intended to encompass threats of "dire consequences by means of other than overt violence.")

[10] *Id.* at 154 ("in an appropriate case we think that the court in instructing the jury would be required to draw a line between improper threats or coercion and permissible warnings or adverse but legitimate consequences").

model proposed for imitation or a discernible coherent system based on the intended interrelationship of component parts.

If you find that either of the two prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause Plaintiff reasonably to believe that he had no choice but to work or to remain working for the Defendant. In making that determination, you may consider the cumulative effect of the conduct of Mr. Sharma, Mrs. Sharma, and/or the Temple on Plaintiff.

3. Third Element: Knowing Conduct

With regard to the third element, the Plaintiff must prove that Mr. Sharma, Mrs. Sharma, and/or the Temple acted knowingly. A person acts knowingly if he acts voluntarily and intentionally, not because of mistake, accident or other innocent reason. A person acts intentionally if he acts with the specific intent to do something the law forbids. The person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the specific intent to do something the law forbids.

These issues of knowledge and intent require you to make a determination about the state of mind of Mr. Sharma, Mrs. Sharma, and/or the Temple, something that can rarely be proved directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to the Defendant's state of mind. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his words and actions in given circumstances. You are asked to do the same here.

4. Conclusion as to First Three Elements

If you find that the Plaintiff has met his burden of proving each of the first three elements

with respect to Mr. Sharma, Mrs. Sharma, and/or the Temple, then you will have concluded that Mr. Sharma, Mrs. Sharma, and/or the Temple committed forced labor. If you find that the Plaintiff has failed to prove any element, then you must return a verdict for Mr. Sharma, Mrs. Sharma, and/or the Temple.[11]

[11] Adapted from the instructions given in *United States v. Marcus*, No. 05 Cr. 457 (2007) (Ross, J.) and *United States v. Bradley,* 390 F.3d 145, 150 (1st Cir. 2004).

REQUEST NO. 9

ELEMENTS OF THE CLAIM OF TRAFFICKING

Plaintiff asserts that Mr. & Mrs. Sharma, and the Temple, violated Title 18, United States Code, Section 1590. That provision reads:

> 1590. **Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor**
> (a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

To find each of the Mr. Sharma, Mrs. Geeta Sharma, and the Temple liable under this provision, you must find that the Plaintiff has proven each of the following elements:

First, that Mr. Sharma, Mrs. Sharma, and the Temple recruited, harbored, transported, provided, or obtained the labor or services of Plaintiff;

Second, that Mr. Sharma, Mrs. Sharma, and the Temple did so in violation through one of the following prohibited means: (a) through threats of serious harm to, or physical restraint against, Plaintiff or any other person; or (b) through a scheme, plan or pattern intended to cause the Plaintiff to believe that nonperformance would result in serious harm to, or physical restraint against, that person or any other person. The Plaintiff must prove that the type of abuse he suffered was so "extreme, offensive and contrary to fundamental rights as to distinguish it from the type of conduct that ordinarily gives rise to violations of labor and employment laws;"[12] and

[12]Report and Recommendation of Magistrate Judge Pollak, at 37.

Third, that Mr. Sharma, Mrs. Sharma, and the Temple acted knowingly.

I will now explain each of these three elements in greater detail.

1. First Element: Obtaining Labor or Services

In considering the first element, you must decide whether Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff. The term "obtain" means to gain, acquire or attain and you are to apply that definition here. If you find that the Plaintiff has proven that Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff, then the first element has been satisfied.

2. Second Element: Prohibited Means of Obtaining Labor or Services

If you find that Mr. Sharma, Mrs. Sharma, and/or the Temple obtained the labor or services of Plaintiff, then you must determine whether each Mr. Sharma, Mrs. Geeta Sharma, and the Temple did so through one of the two prohibited means, that is, either (a) through threats of serious harm to, or physical restraint against, Plaintiff or some other person; or (b) through a scheme, plan or pattern intended to cause the person to believe that serious harm to, or physical restraint against, Plaintiff or some other person would result if he did not perform the labor or services required of him. In order to find that the second element has been satisfied, you must find that one of the prohibited means I just mentioned was used to obtain Plaintiff's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element has been satisfied.

The term "serious harm" as used in this statute includes both physical and non-physical types of harm. Therefore a threat of serious harm need not involve any threat of physical

violence. However, the threats must be improper and must involve dire consequences that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person in the same situation to provide, or continue to provide, labor or services.[13] It is not a threat of serious harm, however, to warm someone of adverse consequences, such as denial of future employment or withholding of wages or other monetary compensation.[14] You must draw a line between improper threats or coercion and permissible warnings of adverse, but lawful consequences. In considering whether a threat of harm is sufficient to compel or coerce the victim's services, you may consider the totality of Mr. Sharma's, Mrs. Sharma's, and/or the Temple's conduct, as well as any aspects of the Plaintiff's age, background, or circumstances that were known to Mr. Sharma, Mrs. Sharma, and/or the Temple and that made Plaintiff especially vulnerable to pressure.

The term "physical restraint" means forcible restraint such as being tied, bound or locked up.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. A "scheme" is a plan or program of action, especially a crafty or secret one. A "plan" is a method for achieving an end or a detailed formulation of a program of action. A "pattern" is a form or model proposed for imitation or a discernible coherent system based on the intended interrelationship of component parts.

---

[13] *United States v. Bradley,* 390 F.3d 145, 150 (1st Cir. 2004) (citing Congressional hearing report, threats of "serious harm" intended to encompass threats of "dire consequences by means of other than overt violence.")

[14] *Id.* at 154 ("in an appropriate case we think that the court in instructing the jury would be required to draw a line between improper threats or coercion and permissible warnings or adverse but legitimate consequences").

If you find that either of the two prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause Plaintiff reasonably to believe that he had no choice but to work or to remain working for the Defendant. In making that determination, you may consider the cumulative effect of the conduct of Mr. Sharma, Mrs. Sharma, and the Temple on Plaintiff.

3. Third Element: Knowing Conduct

With regard to the third element, the Plaintiff must prove that Mr. Sharma, Mrs. Sharma, and the Temple acted knowingly. A person acts knowingly if he acts voluntarily and intentionally, not because of mistake, accident or other innocent reason. A person acts intentionally if he acts with the specific intent to do something the law forbids. The person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the specific intent to do something the law forbids.

These issues of knowledge and intent require you to make a determination about the state of mind of Mr. Sharma, Mrs. Sharma, and the Temple, something that can rarely be proved directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to the state of mind of Mr. Sharma, Mrs. Sharma, and the Temple. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his words and actions in given circumstances. You are asked to do the same here.

4. Conclusion as to First Three Elements

If you find that the Plaintiff has met his burden of proving each of the first three elements with respect to Mr. Sharma, Mrs. Sharma, and the Temple, then you will have concluded that

Mr. Sharma, Mrs. Sharma, and the Temple committed forced labor. If you find that the Plaintiff has failed to prove any element, then you must return a verdict for Mr. Sharma, Mrs. Sharma, and the Temple.[15]

---

[15] Adapted from the instructions given in *United States v. Marcus*, No. 05 Cr. 457 (2007) (Ross, J.) and *United States v. Bradley,* 390 F.3d 145, 150 (1st Cir. 2004).

REQUEST NO. 10

DAMAGES FOR FORCED LABOR

If you find for the Plaintiff on the charge of forced labor, then you may award compensatory damages. Here, Mr. Sharma, Mrs. Sharma, and the Temple assert that under their contract with Plaintiff, Plaintiff was to be provided $500 per month in addition to room and board.

If you find that Plaintiff has established that Mr. Sharma, Mrs. Sharma, and/or the Temple did not provide Plaintiff with these items, you may award damages to Plaintiff in such amount as you find that the Plaintiff has established that he was underpaid.

If you find that Plaintiff is entitled to a verdict in accordance with these instructions, but do not find that Plaintiff has sustained substantial actual damages, then you may return a verdict for Plaintiff in a nominal sum such as one dollar.[16]

[16] *Federal Jury Practice and Instructions*, §128.82.

REQUEST NO. 11

DAMAGES FOR TRAFFICKING, PEONAGE, SLAVERY OR INVOLUNTARY SERVITUDE

If you find for the Plaintiff on the charge of trafficking, peonage, slavery, or involuntary servitude, then you may award compensatory damages. Here, Mr. Sharma, Mrs. Sharma, and the Temple assert that Plaintiff voluntarily agreed to function as a priest for$500 per month in addition to room and board.

If you find that Plaintiff has established that Mr. Sharma, Mrs. Sharma, and/or the Temple did not provide Plaintiff with these items, you may award damages to Plaintiff in such amount as you find that the Plaintiff has established that he was underpaid.

If you find that Plaintiff is entitled to a verdict in accordance with these instructions, but do not find that Plaintiff has sustained substantial actual damages, then you may return a verdict for Plaintiff in a nominal sum such as one dollar.[17]

[17] *Federal Jury Practice and Instructions*, §128.82.

REQUEST NO. 12

LIBEL AND SLANDER

A "libel" is a false and malicious defamation of a person by [printing or writing] tending to provoke the person to wrath or to expose the person to public hatred, contempt or ridicule, or to deprive the person of the benefits of public confidence and social dealings.[18] In other words, Libel is the publication of a statement about someone that is both false and defamatory.[19]

A statement is libelous per se if the statement tends to expose a person to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.[20] Additionally, a defamatory statement is libelous per se if it imputes fraud, dishonesty, or misconduct.[21]

Mr. Sharma, Mrs. Geeta Sharma, and the Temple have asserted that Plaintiff has libeled and slandered them by stating in public that Mr. Sharma, Mrs. Geeta Sharma, and the Temple kept Plaintiff as a slave, that they forced him to work 16-hour days, that they forbade him from leaving the Temple, that they made him perform domestic tasks at the residence of the individual Mr. Sharma, Mrs. Geeta Sharma, and the Temple, that they constantly threatened him physically and emotionally, that they took Plaintiff's passport from him in the year 2000 and refused to return it to him, that they subjected Plaintiff to exploitative work conditions, that they paid him

---

[18] 3 *Fed. Jury Prac. & Instr.* § 124.10 (5th ed.) (§ 124.10. "Libel"—Defined).

[19] *Brian v. Richardson*, 87 N.Y.2d 46, 50-51 (1995).

[20] *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379, *cert. denied* 434 U.S. 969 (1977).

[21] *Matovcik v. Times Beacon Record Newspapers*, 849 N.Y.S.2d 75, 77 (2 Dept. 2007).

wages below what he was promised or what was required by law, that they refused to provide Plaintiff with a means of obtaining food, that they forced him to survive on the donations of food left as offerings by devotees, and that they forced Plaintiff to relinquish his tips received from devotees. Mr. Sharma, Mrs. Geeta Sharma, and the Temple assert that these allegations are false.

To recover damages for libel, Mr. Sharma, Mrs. Geeta Sharma, and the Temple have the burden of proving three elements. If they have proved all three of these elements, you will decide in their favor and go on to determine the amount of damages. However, if they failed to prove any one of these elements, they may not recover.

First, Mr. Sharma, Mrs. Geeta Sharma, and the Temple must prove that the statement was defamatory, meaning that the statement had a tendency to expose them to public hatred, contempt, ridicule or disgrace.

Second, Mr. Sharma, Mrs. Geeta Sharma, and the Temple must prove that the statement referred to them, meaning that the statement would be reasonably understood to be about them.

Third, Mr. Sharma, Mrs. Geeta Sharma, and the Temple must prove that Plaintiff published or broadcast the statement, meaning that he communicated the statement to someone other than Mr. Sharma, Mrs. Geeta Sharma, and the Temple.

Mr. Sharma, Mrs. Geeta Sharma, and the Temple have the burden of proving these three elements by a "fair preponderance of the credible evidence." What does "a fair preponderance of the credible evidence" mean? The credible evidence means the testimony or exhibits that you find to be worthy of belief. A preponderance means the greater part of such evidence. That does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its convincing quality, the weight and the

effect that it has on your mind. The law requires that, in order for Mr. Sharma, Mrs. Geeta Sharma, and the Temple to sustain their burden of proof as to each element, the evidence that supports their claim must appeal to you as more nearly representing what took place than that opposed to their claim. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must decide the question in favor of the Plaintiff. If the evidence favoring their claim as to any element outweighs the evidence opposed to it, then you must decide in favor of them.

REQUEST NO. 13

CONVERSION

A person who, without authority, intentionally exercises control over the property of another person and thereby interferes with the other person's right of possession has committed a conversion and is liable for the value of the property.[22] In other words, conversion is the unauthorized exercise of dominion and control over specifically identified property which ultimately trepasses upon an owner's rights.[23]

This claim is primarily concerned with right of possession and not title[24] of tangible personal property.[25] Elementally, the Temple is required to establish (1) the Plaintiff's intent to exercise control over a specific property, (2) interference with that property to the exclusion of the Temple's rights, and (3) the Temple's right of possession in the owner-plaintiff.[26]

Here, the Temple has asserted that Plaintiff has converted (a) eleven holy books, (b) five gold statues of Hindu deities, (c) three gold chains, and (d) two gold necklaces. The Plaintiff denies this. If you find that the Temple has proven this claim by a preponderance of evidence, you should return a verdict for the Temple and against the Plaintiff in an amount equal to the value of

---

[22] *N.Y. Pattern Jury Instructions*, §3:10.

[23] *Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2d Dep't 2004); *Bright View Trading Co., Inc. v. Park*, 2004 WL 2071976, at *8 (S.D.N.Y. Sept. 16, 2004) (quoting State of New York v. Seventh Regiment Fund, 98 N.Y.2d 249, 259 (2002)).

[24] *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (N.Y. 1932).

[25] *Roemer & Featherstonhaugh, P.C., v. Featherstonaugh*, 267 A.D.2d. 697 (3d Dep't 1999); *Barrett v. Toroyan*, 28 A.D.3d 331, 333 (1st Dep't 2006).

[26] *Nelson v. Ulster County*, 2007 WL 2288053 (N.D.N.Y. Aug. 7, 2007) (*citing* 2 *N.Y. Pattern Jury Instruction* § 3:10).

the items converted.

REQUEST NO. 14

BREACH OF CONTRACT

The Temple asserts that in early 2000, Plaintiff entered into a contract with the Temple. The terms of that contract was that Plaintiff would function as a full time priest in the Temple, devote all his time and all his efforts to perform all religious ceremonies in the Temple, and act honestly and honorably in a manner befitting a priest. In return, the Temple would pay Plaintiff $500 per month, and provide him with room and board.

The Temple further asserts that the Plaintiff breached his implied covenant of good faith and fair dealing which underlies every contract. The law implies a covenant of good faith and fair dealing in every contract.[27] The covenant is breached when a party acts in a manner that deprives the other party of the right to receive benefits under their agreement. The covenant encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included.[28]

The Temple asserts that (a) it performed its part of the contract by paying Plaintiff $500 every month, and by providing Plaintiff with room and board; but (b) Plaintiff breached the contract, and his implied covenant of good faith and fair dealing by stealing money and other valuable items from the Temple, by conducting a business of providing astrological services clandestinely and without the knowledge of the Temple, and by defaming the Temple to the

---

[27] *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144 (2002); *Dalton v. Educational Testing Service*, 87 N.Y.2d 384 (1995); *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62 (1978).

[28] *Held v. Macy's, Inc.*, 2009 WL 3465945, 14 (N.Y.Sup. Oct 19, 2009); *JFK Family Ltd. Partnership v. Millbrae Natural Gas Development Fund 2005, L.P.*, 2008 WL 4308289, 22 (N.Y.Sup. Sep 16, 2008).

devotees and the media.

Breach of contract, requires that the Temple establish (a) the existence of a binding contract; (b) the Temple' performance of the contract; (c) Plaintiff's material breach of the contract; and (d) damages.[29]

[29] *Conception Bay, Inc. v. Koenig Iron Works, Inc.*, 2010 WL 2217799, 4 (N.Y.Sup. May 28, 2010); *Furia v. Furia*, 116 A.D.2d 694, 695 (2d Dep't 1986).

REQUEST NO. 15

DAMAGES FOR CONVERSION

If you find the Plaintiff liable for conversion, you should award damages to the Temple. Damages recoverable are, as a general rule, the value of the property, that is the amount required to replace it, at the time and place of the taking,[30] unless special circumstances require adoption of a different measure of damages, such as the item having no market value or is held for personal use.[31]

Generally, the measure of damages for loss of personal property is based upon the value of the property at the time of the loss. When, as in this case, the property lost or destroyed has no reasonable market value, the Temple may recover the difference in money between the value to the Temple of the property before and after the loss or destruction. In determining the amount of such loss, you consider the evidence presented with respect to the original cost of such property when new, the price paid for it by the Temple, and its age at the time of purchase, the value of the materials and labor used in producing it, its utility, the use it has received and its age at the time of the loss or destruction, the extent of its deterioration or depreciation, if any, and its general condition at the time of its loss or destruction, whether it may be replaced or reproduced, and, if so, the expense of replacing or reproducing it and its value as so replaced or reproduced as compared to the value before its loss, or destruction, together with all other evidence presented to establish its value to the Temple and the extent of Temple's damage. Having these elements in mind, and carefully weighing each in the exercise of your sound judgment, you will determine the

[30] *Wallingford v Kaiser*, 191 N.Y. 392 (1908).

[31] *N.Y. Pattern Jury Instr.--Civil* 3:10

loss in money which the Temple suffered by reason of the loss or destruction of its property in this case.

REQUEST NO. 16

DAMAGES FOR BREACH OF CONTRACT

A physician who agrees to perform certain services honestly, and fails to do so is liable for the return of any fee paid to and for other damages which naturally result from his failure to carry out his promise. You must decide from the evidence that you have heard what the agreement between the Temple and the Plaintiff was.

If you find that the Plaintiff breached his contract, and/or the implied covenant of good faith and fair dealing, you should award damages to the Temple. Only those damages which naturally and directly flow from the breach of contract can be recovered.[32] Damages for breach of contract to perform services include recovery of the amount paid on the contract, and other damages flowing from the breach.[33]

---

[32] *Hirsch v Safian*, 12 N.Y.S.2d 568 (1st Dep't 1939).

[33] *Frankel v Wolper*, 169 N.Y.S. 15 (2nd Dept 1918), *aff'd*, 228 N.Y. 582 (1919).

REQUEST NO. 17

DAMAGES FOR LIBEL AND SLANDER

I am now going to instruct you on the law of damages. The fact that I instruct you on the law of damages must not be taken as an indication that you should decide for Mr. Sharma, Mrs. Sharma, and the Temple. You will decide on the evidence presented and the rules of law that I have given you whether Mr. Sharma, Mrs. Sharma, and the Temple are entitled to recover from the Plaintiff on account of libel and slander.

If you decide that Mr. Sharma, Mrs. Sharma, and the Temple are entitled to recover, you will award an amount as, in the exercise of your good judgment and common sense, you decide is fair and just compensation for the injury to Mr. Sharma's, Mrs. Sharma's, and the Temple's reputation and the humiliation and mental anguish in each of their public and private life which you decide was caused by Plaintiff's statement. In fixing that amount you should consider the standing in the community of Mr. Sharma, Mrs. Sharma, and the Temple, the nature of Plaintiff's statement made about them, the extent to which the statement was circulated, the tendency of the statement to injure a person such as Mr. Sharma, Mrs. Sharma, and the Temple, and all of the other facts and circumstances in the case. These damages cannot be proved with mathematical accuracy. Fair compensation may vary, ranging from one dollar, if you decide that there was no injury, to a substantial sum if you decide that the injury was substantial.[34]

[34] *N.Y. Pattern Jury Instructions*, §3:29

REQUEST NO. 18

PUNITIVE DAMAGES

The damages that I have discussed with you so far are called compensatory, because they are intended to compensate for injury suffered by Mr. Sharma, Mrs. Sharma, and the Temple. In addition, Mr. Sharma, Mrs. Sharma, and the Temple ask that you award punitive damages. Punitive damages may be awarded to punish a person who has acted maliciously and to discourage others from doing the same.[35] A statement is made maliciously if it is made with deliberate intent to injure or made out of hatred, ill will, or spite or made with wilful, wanton or reckless disregard of another's rights.

If you find that, in making the statements about Mr. Sharma, Mrs. Sharma, and the Temple, Plaintiff acted maliciously, as I have just defined that term for you, you may, but are not required to, award Mr. Sharma, Mrs. Sharma, and the Temple punitive damages. If you find that Plaintiff's statement was not made maliciously, as I have defined that term for you, you may not award punitive damages. The burden of proving that Plaintiff acted with malice is on Mr. Sharma, Mrs. Sharma, and the Temple.

In support of their claim of malice, Mr. Sharma, Mrs. Sharma, and the Temple claims that Plaintiff defamed them maliciously, and arranged for the publication of false and defamatory statements about them. Plaintiff denies that.

In arriving at your decision as to the amount of punitive damages you should consider the following factors:

1. The nature and reprehensibility of what the Plaintiff did. That would include the character

---

[35] 3 *Fed. Jury Prac. & Instr.* §124.31 (5th ed.), §124.31 (Punitive Damages).

of the wrongdoing and his awareness of what harm the conduct caused or was likely to cause. In considering the amount of punitive damages to award, you should weigh this factor heavily.

2. The actual and potential harm created by Plaintiff's conduct. The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by Mr. Sharma, Mrs. Sharma, and the Temple, and to the compensatory damages you awarded Mr. Sharma, Mrs. Sharma, and the Temple.

3. The Plaintiff's financial condition and the impact your punitive damages award will have on the Plaintiff.

In reporting your verdict, you will state the amount, if any, awarded by you as punitive damages.[36]

---

[36] 2 *N.Y. Pattern Jury Instructions*, §3:30

## CONCLUSION

Mr. Sharma, Mrs. Sharma, and the Temple respectfully request that the foregoing instructions be given to the jury. We also request leave to amend the proposed instructions or submit additional instructions as they become necessary or appropriate in light of the evidence presented at trial.

Dated: New York, New York
June 7, 2010

**Chittur & Associates, P.C.**

Sd/-

By: Krishnan Chittur, Esq. (KC 9258)
286 Madison Avenue, Suite 1100
New York, NY 10017
Tel. (212) 370-0447
Attorneys for Defendants Sat Prakash Sharma, Geeta Sharma, and Vishva Seva Ashram d/b/a Sarva Dev Mandir