UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

DEVENDRA SHUKLA,

                    Plaintiff,

          - against -

SAT PRAKASH SHARMA, individually
and as Director of VISHVA SEVA ASHRAM
of NEW YORK, et al.,

                  Defendants.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

07 CV 2972 (CBA)

       On July 23, 2007, plaintiff Devendra Shukla commenced this action against defendant

Vishva Seva Ashram of New York, d/b/a Sarva Dev Mandir (the "Ashram"), and defendants Sat

Prakash Sharma ("Sat Sharma") and Geeta Sharma, individually and as directors of the Ashram.

The Complaint alleges that the defendants induced plaintiff to leave India to come work in the

United States as a priest in the Ashram, and that once plaintiff was here, defendants allegedly

subjected him to exploitative work conditions through psychological and emotional abuse, in

violation of the forced labor and trafficking provisions of the Victims of Trafficking and

Violence Protection Act of 2000 ("TVPA"), 18 U.S.C. § 1595.  In addition, the Complaint

alleges violations of the Fair Labor Standards Act, 28 U.S.C. § 216(b), and the New York State

wage and hour laws, based on defendants' alleged failure to pay plaintiff minimum wages and

overtime.

       On September 29, 2009, the district court entered an Order adopting in full this Court's

recommendation that defendants' Motion for Summary Judgment[1] be granted to the extent that it sought to dismiss all claims, except for those arising under the TVPA. The Report and Recommendation ("R&R") further recommended that defendants be awarded "reasonable attorneys' fees and costs incurred in connection with defendants' counsel's repeated efforts to obtain [certain] discovery and in preparing this section of the instant motion." (R&R at 33-34). Defendants were directed to submit an affidavit and supporting time records if they wished to obtain these fees.

On September 24, 2009, defendants filed supporting documentation, to which plaintiff responded on October 15, 2009. Thereafter, in letters dated July 16, 2010 and August 9, 2010, the defendants requested that the court grant an immediate award of their requested attorneys' fees and costs. On August 18, 2010, defendants' request for fees and costs was referred to the undersigned.

## DISCUSSION

I.   Authority to Impose Sanctions

This Court has already determined that the plaintiff has committed spoliation, which the Second Circuit has defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). Rule 37 of the Federal

---

[1]The Motion for Summary Judgment, which among other things, sought to dismiss plaintiff's claims as a sanction for the alleged spoliation of evidence, is often referred to by the parties in their records and motion papers as a "Motion to Dismiss." To avoid confusion, the Court has construed all references to the Motion to Dismiss as actually referring to the January 27, 2009 Motion for Summary Judgment.

Rules of Civil Procedure authorizes a court to impose various sanctions when a party commits

spoliation, or "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2);

see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189

(S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its

disclosure obligations, especially after court orders"). It is clear that sanctions may therefore be

imposed when a party spoliates evidence in violation of a court order. See, e.g., West v.

Goodyear Tire & Rubber Co. 167 F.3d at 779 (citing John B. Hull, Inc. v. Waterbury Petroleum

Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)). The courts in this Circuit have further held

that, even where no explicit discovery order has been issued, the court has the inherent power to

preserve the integrity of judicial proceedings by, among other things, imposing sanctions for

spoliation. See id.; Kronisch v. United States, 150 F.3d 122, 126-27 (2d Cir. 1998); Sterbenz v.

Attina, 205 F. Supp. 2d 65, 73-74 (E.D.N.Y. 2002); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D.

396, 399 (S.D.N.Y. 2001).

The imposition of specific sanctions for spoliation "should be 'molded to serve the

prophylactic, punitive and remedial rationales underlying the spoliation doctrine,' which is

predicated upon the rationale that by destroying evidence, one party has deprived the other of the

ability to prosecute or defend an action." Sterbenz v. Attina, 205 F. Supp. 2d at 74 (citing West

v. Goodyear Tire & Rubber Co., 167 F.3d at 779). Sanctions are "designed to:  (1) deter parties

from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who

wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would

have been in absent the wrongful destruction of evidence by the opposing party.'" West v.

Goodyear Tire & Rubber Co., 167 F.3d at 779 (citation omitted); see also Update Art, Inc. v.

Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (describing the three purposes behind

3

sanctions under Rule 37) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639

(1976) (per curiam)).  Among the various sanctions available under subsection (b)(2) of Rule 37,

the Court is permitted to impose "reasonable expenses, including attorney's fees."  Fed. R. Civ.

P. 37(b)(2)(C); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 763 (1980) (holding that

"[b]oth parties and counsel may be held personally liable for expenses, 'including attorney's

fees,' caused by the failure to comply with discovery orders").

For the reasons stated in the Court's earlier R&R, this Court determined, and the district

court agreed, that sanctions in the form of an award of fees and costs are warranted in this case.


II.     The Parties' Arguments

A. Defendants' Fee Claims

Defendants seek an award of $28,215.20, which consists of $25,813.12 in attorneys' fees

and $2,402.08 in costs.  (Brecher Aff.[2] ¶ 14).  In addition, defendants request up to $1,500 to

cover an interpreter's fee (id. ¶ 13), and $3,400 for the completion of their fee application.  (Id. ¶

8).

Defendants in this case were originally represented by the Law Offices of Dan Brecher

(the "Firm"), until new counsel was substituted on June 11, 2010.  In accordance with the

holding in New York State Association for Retarded Children, Inc. v. Carey, Mr. Brecher has

submitted an affidavit in connection with this fee application, along with time records of the

---

[2]Citations to "Brecher Aff." refer to the Affidavit of Dan Brecher in Support of Award of
Attorney's Fees and Costs, filed on September 24, 2009.

4

hours spent by members of the Firm during the periods at issue here.[3]  711 F.2d 1136, 1148 (2d

Cir. 1983) (holding that an attorney "who applies for court-ordered compensation . . . must

document the application with contemporaneous time records . . . specify[ing], for each attorney,

the date, the hours expended, and the nature of the work done"); see also Scott v. City of New

York, No. 09 CV 3943, 2010 WL 4869766 (2d Cir. Dec. 1, 2010) (reinforcing the requirement

established in Carey, "that all applications for attorney's fees be supported by contemporaneous

records"). The records provided by Mr. Brecher describe the services rendered in connection

with this matter, indicating for each attorney who worked on the matter, listed by their initials,

the date that services were performed, the hours spent performing the services, and a description

of the services performed. (See, e.g., Brecher Aff., Ex.[4] C). It is clearly the attorney's burden to

maintain contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d

1250, 1265 (2d Cir. 1987), and fee applications are subject to denial where the fees have not been

adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d

Cir. 1992). In this case, counsel affirms that it is the "regular practice" of the Firm to enter

billing records into the Firm's computer system and that he based the instant application on those

records. (Brecher Aff. ¶ 2).

In addition to providing contemporaneous billing records, counsel's affidavit provides

information regarding the various attorneys who performed services in connection with the case.

Mr. Brecher, the named partner of the Firm, earned his B.A. from City College of the City

---

[3]All of the services for which fees were granted were provided by Mr. Brecher's Firm,
prior to his replacement. Therefore, defendants' current counsel have not submitted a fee
application.

[4]All citations to "Ex." refer to the four Exhibits (A-D) submitted with the Brecher
Affidavit.

University of New York in 1964 and his J.D. from Fordham University in 1969. (Ex. B). He has been admitted to the New York State Bar since 1969. (Id.) In connection with his practice, counsel has authored numerous legal articles, lectured in continuing legal education courses, and served as a court-appointed mediator for the U.S. District Court for the Southern District of New York. (Id.; Brecher Aff. ¶ 5).

In addition to Mr. Brecher, who is listed on the time logs by his initials "DB," there are two associates who appear on the time entries provided to the Court: Kenneth C. Oh ("KO") and Kimberly D. Reilly ("KDR").[5] (See Ex. A; Ex. C). In Exhibit B to Mr. Brecher's Affidavit, he includes a short paragraph about each of the associates, Mr. Oh and Ms. Reilly. Mr. Oh earned his B.A. from Pomona College in 1993 and his J.D. from Fordham University in 1997. (Ex. B). He appears to have served on a journal while in law school and co-authored part of a chapter in a practice guide book. (Id.) He was admitted to the New York Bar in 1998. (Id.) No other legal experience is detailed for Mr. Oh. Assuming that Mr. Oh had been practicing since joining the New York Bar in 1998, he would have been a tenth or eleventh year associate when he was billing his hours on this case in 2009.

Ms. Reilly received her B.A. from the College of William and Mary in 1990, an M.A. from the University of Richmond in 1997, and her J.D. from Fordham University in 2002. (Id.) Ms. Reilly also appears to have been on a journal while in law school and seems to have co-

---

[5] While Mr. Brecher never explicitly explains in his Affidavit that these are the individuals to whom the initials on the time entry logs refer, the Court finds that enough information has been provided to allow the Court to make this connection. In addition, while Mr. Brecher also never explains who the notations in the record to "EG" may refer to, the Court assumes that EG is a paralegal since EG's time is billed at $100 per hour, which is consistent with the Firm's billing rate for paralegals. (See Brecher Aff., Ex. A, which is a letter, dated July 30, 2007, that Mr. Brecher sent to the defendants, explaining his fees and the other terms of the Firm's retention agreement).

authored the same chapter as Mr. Oh. (Id.) She was admitted to the New York Bar in 2003. (Id.) As with Mr. Oh, no other legal experience information has been provided regarding Ms. Reilly. Assuming that Ms. Reilly had been practicing law since joining the New York Bar in 2003, she would have been a fourth year associate when she was billing for this case in late 2007 through mid-2008.

In his Affidavit, counsel affirms that on July 30, 2007, defendants entered into a Retainer Agreement with the Firm that, among other things, provided for an hourly billing rate of $425. (Brecher Aff. ¶ 3). Counsel claims that, given the nature of this case, he agreed to discount his usual hourly rate of $625 per hour down to $425 per hour for these clients. (Id.; see also Ex. A). In a letter addressed to Mr. and Mrs. Sharma explaining the Firm's fees, Mr. Brecher explained that the two aforementioned associates would be assisting him with their case (Ex. A), and that "[h]ourly rates will be billed at the blended rate of $425 per hour for the services of the attorneys servicing this matter." (Id.) Brecher's letter also notes that "Paralegal Services are billed at $100 per hour." (Id.)

In seeking an award of fees as a sanction for plaintiff's spoliation, defendants, appropriately, do not seek to recover the entire amount of fees billed; rather, in accordance with this Court's R&R, the Firm seeks "an award of legal fees incurred in connection with Defendants' counsel's repeated efforts to obtain discovery ordered by the Court but not produced by Plaintiff, the preparation of the relevant section of the Motions, and costs incurred in connection therewith." (Brecher Aff. ¶ 6). Counsel asserts that this latter amount should be 25% of the total attorneys' fees and costs that defendants expended during the periods November 26,

7

2007 to August 29, 2008 and September 2, 2008 to August 31, 2009.[6] (Id. ¶¶ 9-10). In total, the defendants ask the Court to award them $25,813.12 in attorneys' fees, which they represent is 25% of the total fees incurred during the relevant time periods. (Id. ¶ 12). To arrive at that total, defendants first request $11,589.37 in fees incurred during the period November 26, 2007 to August 29, 2008,[7] based on counsel's "repeated efforts to obtain [] discovery" relating to the missing computer. (Id. ¶ 9; see also Ex. C).

In addition, defendants request $10,823.75 for time spent by counsel during the period from September 2, 2008 through August 31, 2009, in connection with counsel's preparation of the defendants' motion papers seeking summary judgment and spoliation sanctions. As with the calculation of fees incurred during the earlier period, counsel seeks to recover only 25% of the $43,295 in total fees billed during this later period. (Brecher Aff. ¶ 10; see also Ex. C). Defendants also seek $3,400 for eight hours of work performed by counsel in preparing the instant motion for counsel's fees. (Brecher Aff. ¶ 4).

Furthermore, in addition to attorneys' fees, defendants seek $2,402.08 in costs incurred by counsel and up to an additional $1,500 to be paid for the services of an interpreter, Ms. Pria Bala, who was present at and translated for plaintiff during his deposition. (Id. ¶ 13). As with the requested fees, the defendants arrive at the $2,402.08 in costs requested by seeking only 25% of the total $9,608.34 incurred. (Id.; see also Ex. D). Defendants believe that the fees and costs

---

[6] It appears that counsel arrived at the 25% figure by averaging the percentage of the R&R that he calculates dealt with spoliation, 22%, and the percentage of defendants' summary judgment motion papers that he calculates dealt with spoliation, 28%. (Brecher Aff. ¶ 8).

[7] According to defendants, the total amount of fees billed by the Firm during this period amounts to $46,357.05. Defendants assert that 25% of that total is $11,589.37. (Brecher Aff. ¶ 9; see also Ex. C). However, defendants appear to have made a typographical or mathematical error in requesting $11,589.37; 25% of $46,357.05 is actually $11,589.26.

requested by counsel are reasonable, noting:

> The high amount of fees that arose . . . and the substantial expenses
> that arose, are attributable, in part, to the dilatory discovery
> behavior of the Plaintiff, and most notably, difficulties encountered
> in obtaining discovery of Plaintiff's computer messages and
> documents, which required that the Firm expend significant extra
> time and expense in depositions, correspondence, conferences with
> opposing counsel and with the Court, and in applying for and
> obtaining several Orders of this Court directing the plaintiff to
> produce such discovery, which the Plaintiff ultimately refused to
> honor, all without a reasonable explanation.

(Brecher Aff. ¶ 3).


B. Plaintiff's Response

Plaintiff objects to defendants' request for attorneys' fees and costs, asserting that the

amount of the fees sought by defendants is "an exorbitant amount" that is "completely

unreasonable." (Pl.'s Resp.[8] ¶ 8). Plaintiff further argues that defendants' counsel's billing

summaries are "problematic" and that it is a "sign of incompetence for an attorney to spend over

200 hours on a single motion." (Id.) Plaintiff claims that: (1) the attorney time-sheets presented

in Exhibit C "purposely conceal[] and omit[]" relevant information[9] (id. ¶ 9); (2) the fee

application seeks "costs," which plaintiff claims were not authorized by the R&R[10] (id. ¶ 10

---

[8]Citations to "Pl.'s Resp." refer to Plaintiff's Reply to Defendant[s'] Request for
Attorney's Fees and Costs," filed on October 15, 2009.

[9]This appears to be a reference to the fact that many of defendants' counsel's time entries
were redacted or blackened out. As noted infra at 11, the defendants appear not to be seeking
fees for the majority of those redacted time entries.

[10]Plaintiff asserts that "[t]he Brecher Affidavit in paragraph 13 boldly requests 'costs
attributable to the specific discovery and Motions costs awarded in the Report and
Recommendations.' However, nowhere in the Court-issued Report and Recommendations are
any costs awarded." (Pl.'s Resp. ¶ 10). However, this is incorrect; this Court explicitly "awards

(citing Brecher Aff. ¶ 13)); and (3) defendants' requests "go well beyond the scope" of the sanctioned conduct and are therefore not compensable. (Id. ¶¶ 10-11).

The thrust of plaintiff's argument is that the defendants have "misconstrued" the R&R by interpreting it "broadly to include all work that defendant[s'] attorneys have undertaken during the case." (Id. ¶ 12). Plaintiff argues that the billing records in Exhibit C "clearly include[] entries that are beyond the scope of preparing a Motion," including depositions, which plaintiff characterizes as "conducted by the choice of the attorney and his clients."[11]  (Id. ¶ 15). Plaintiff also contends that billing records include "blatantly excessive amounts for a number of entries," including "30 hours spent under the label of 'revision.'"  (Id. ¶ 16).

III.  Defendants' Application for Fees

    A.  Reasonableness of Hours Billed

Plaintiff generally challenges the reasonableness of the number of hours spent on this matter, suggesting that the Court should set an appropriate percentage reduction.  Having carefully reviewed the supporting records, the Court agrees that defendants' request for $28,215.20 in fees is not reasonably related to the records provided and that their method of arriving at the total appears to be somewhat arbitrary.

As an initial matter, the Court may not award fees for hours requested where the requesting party has not provided adequate documentation.  Scott v. City of New York, 2010 WL

---

defendants reasonable attorneys' fees and *costs* incurred in connection with defendants' counsel's repeated efforts to obtain this discovery and in preparing this section of the instant motion."  (R&R at 33-34) (emphasis added).

    [11]See n.28, infra at 30.

4869766, at *3 (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at

1147-48). In Carey, the Second Circuit stated that "contemporaneous time records are a

prerequisite for attorney's fees in this Circuit . . . we think it appropriate to convert our

previously expressed preference for contemporaneous time records into a mandatory requirement

. . . . Hereafter, any attorney who applies for court-ordered compensation in this Circuit for work

done after the date of this opinion [1983] must document the application with contemporaneous

time records." 711 F.2d at 1147-48. As already noted, it is plainly the attorneys' burden to

maintain these contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees,

810 F.2d at 1265, and the fee applicant's burden to prove an award of attorneys' fees. See Blum

v. Stenson, 465 U.S. at 886, 896 n.11 (1984). Therefore, fee applications are subject to denial

where the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire

Ins. Co., 977 F.2d at 53.

 With respect to the number of hours for which fees are sought in this case, defendants'

counsel has submitted time records setting forth the dates upon which services were rendered and

the amount of time spent by the various individuals, as is required. See New York State Ass'n

for Retarded Children, Inc. v. Carey, 711 F.2d at 1147-48. (See also Ex. C). Counsel's time

records contain many entries where counsel has redacted the descriptions of the work performed,

suggesting that these entries were not relevant to the subject matter of the sanctions award.

Indeed, in their calculations, defendants seem to have excluded those entries from the total

calculation of the fees owed.

 However, the Court notes that there are also entries where only portions of the description

have been redacted, but where the total number of hours appear to have been included in

defendants' calculation of hours. The Court is permitted to deny recovery for those hours that are

11

unsupported by contemporaneous records.  See, e.g., Nu-Life Constr. Corp. v. Bd. of Ed. of the City of New York, 795 F. Supp. 602, 606 (E.D.N.Y. 1992) (holding that "[s]ince no records have been provided for this time, it may not be considered in determining the fee award").  Since the portions of the descriptions that are visible may be compensable, the Court has made its best attempt to divide up the hours based upon the number of tasks that appear to be listed and redacted, since there is no other real basis upon which to prorate the total number of hours for those entries.[12]  For example, in an entry where it appears that one task has been redacted, but three others remain, the Court recommends an award of 3/4 of the total hours billed.[13]  In a few of the entries, too much has been redacted to know how many tasks have not been included.  In those situations, the Court has awarded half of the hours requested.[14]

Furthermore, many of the hours that do not have redacted descriptions still lack adequate accounts of how the time was spent to justify granting fees for the entire amount of time listed.  For instance, EG billed eight hours on January 7, 2009, nine hours on January 8, 2009, and six and a half hours on January 9, 2009, for what is described merely as "Research."  (Ex. C).  In the absence of any further detail, it is impossible to determine if any of this time was spent on research relating to plaintiff's spoliation or to the award of spoliation sanctions.  As already explained, it is the attorneys' burden to maintain contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265, and to prove an award of attorneys' fees.  See Blum v. Stenson, 465 U.S. at 896 n.11.  Therefore, fee applications are subject to denial where

---

[12]See discussion on block-billing infra at 13-14.

[13]See, e.g., entry dated May 13, 2009.

[14]The Court has attached to this Order, as Appendix A, two charts detailing these calculations.

the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d at 53.

The law is also clear that in reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-35 (1983)). In evaluating time sheets and expense records, some courts have simply subtracted irrelevant hours from the amount of hours claimed in order to calculate the actual number of hours to credit. See, e.g., Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991). The district court, however, is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). Moreover, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citations omitted).

In this case, the problems created by counsel's vague descriptions are exacerbated by block-billing,[15] or the lumping together of discrete tasks with others that are not clearly defined,

---

[15]Mr. Brecher admits that "block time records were kept for the many hours devoted to the instant action." (Brecher Aff. ¶ 7). However, he claims that defendants should not be penalized for this block-billing because "the Firm could not have anticipated the sanctionable behavior of Plaintiff and his counsel" or the limited scope for which fees would be awarded (for "the issues of the Plaintiff's failures and refusals to produce discovery" and "for the preparation of 'this section of the instant motion'" only). (Id.) However, as already noted, it is the attorney's responsibility to keep the appropriate billing records. "There is no excuse for the sparse documentation that accompanied at least portions of [defendants'] original application for attorney's fees." Scott v. City of New York, 2010 WL 4869766, at *2 (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1147). Furthermore, counsel's block-billing deficiencies are not limited to the failure to separate out the issues being researched or worked on. Even if the Court, for example, were to reward fees for the entirety of the Motion for Summary Judgment, it would be impossible to separate out the hours spent on the motion from those spent on telephone calls, emails, faxes, and the like.

which "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." Ass'n of Holocaust Victims v. Bank Austria, No. 04 CV 3600, 2005 WL 3099592, *5 n.9 (S.D.N.Y. Nov. 17, 2005). In this regard, courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1146; see also Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64-65 (E.D.N.Y. 2003); Rotella v. Board of Ed., No. 01 CV 0434, 2002 WL 59106, at *1, *3-4 (E.D.N.Y. Jan. 17, 2002).

Accordingly, given the vagueness and block-billing of many of the time entries, the Court respectfully recommends that there be a percentage reduction for all billing found to be overly vague or excessive. Compare United States Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (reducing billed hours by 10% to account for vagueness), cert. denied, 493 U.S. 1071 (1990); Ass'n of Holocaust Victims v. Bank Austria, 2005 WL 3099592, *5 (reducing lodestar by 25% to account for block-billing and vagueness); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing lodestar by 15% to account for block-billing and excessive billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing the fees of one attorney by 20% and another by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (deducting 40% of plaintiffs' hours, finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work").

To start, defendants have requested $11,589.37 for fees incurred during the period November 26, 2007 to August 29, 2008 as a result of counsel's "repeated efforts to obtain" discovery of spoliated evidence. (Brecher Aff. ¶ 9). Defendant asserts that this amounts to 25%

of their claimed total fees of $46,357.05.[16]  (Id.; see also Ex. C).  Using the rate of $425 per hour

that counsel used for all members of the Firm to calculate the fees,[17] $46,357.05 would be the

charges for approximately 109.07 hours.  No explanation has been provided as to how this

$46,357.05 amount was arrived at.  Despite extensive review of the supporting documentation

provided by the defendants, the Court has been unable to recreate that number.  Based on the

time sheets provided and discounting for the fully redacted entries, the Court calculates that there

is a total of 102.2 hours billed with full descriptions, and a total of 11.2 hours billed with partial

descriptions, during this time period.[18]

Similarly, defendants have also requested the amount of $10,823.75 for counsel's

preparation of the relevant section of defendants' motion papers, which is 25% of what

defendants claim are their total fees of $43,295 incurred during the period September 2, 2008 to

August 31, 2009.  (Brecher Aff. ¶ 10; see also Ex. C).  Again, the Court has been unable to

determine how counsel arrived at these numbers and no explanation has been provided.  Based

on the Court's calculations, 146 attorney hours were billed at $425 per hour[19] and 116.65 hours

---

[16]See n.7, supra at 8.

[17]The paralegal, EG, only billed during the second time period.  See infra at 20.

[18]These 11.2 partially redacted hours have been discounted to 6.16 hours by the method described above (see discussion supra at 11-12) and as demonstrated in Appendix A.  The majority of the partially redacted entries occur within the time period of November 26, 2007 through August 29, 2008, with the exception of DB's last two entries for the adjusted amounts of 0.9 and .53 hours.  Subtracting those two amounts from the total of 7.59 adjusted hours (4.88 + 2.71) gets the Court to 6.16 hours.  Even if the Court uses this number instead of 11.2 hours, the Court still does not arrive at the same numbers as counsel.

[19]Since two of these entries, which accounted for 2 of the 146 hours of billed time, were partially redacted and reduced to 1.43 hours (see supra at 11-12; Appendix A), adjusting for these hours would result in a total of $61,807.75.

of paralegal work were billed at $100 per hour. This would come out to $62,050 and $11,665, respectively.

Since the numbers proposed by defendants do not appear to correspond with the records provided by counsel and have not otherwise been explained, the Court has relied on the time records that defendants have submitted and has prepared its own calculations, separated out by individual, in order to assess the number of hours for which defendants should be compensated.

### 1. Dan Brecher (DB)

#### a. Time Entries with Complete Descriptions

Based on the Court's independent review of the billing records, it appears that Mr. Brecher billed 87.90 hours during the period from November 26, 2007 to August 29, 2008, and 131.60 hours for the period from September 2, 2008 to August 31, 2009, for which the descriptions are completely visible and unredacted, for a total of 219.50 hours. (Ex. C).

As noted above (see n.6, supra at 8), counsel has requested 25% of the total fees billed during the aforementioned time periods, a figure which he has arrived at by averaging the percentage of the R&R that he calculates dealt with spoliation, 22%, and the percentage of defendants' summary judgment motion papers that he calculates dealt with spoliation, 28%. (Brecher Aff. ¶ 8). The Court has reviewed these papers and finds that counsel's figure is a good approximation of the time and pages spent addressing this particularly disturbing discovery issue. Therefore, accepting defendants' approximation that 25% of the work during these time periods was spent on issues relating to plaintiff's spoliation, the Court has discounted Mr. Brecher's total number of hours by 75% to 54.88 hours.

However, based on a review of the time entries documenting Mr. Brecher's hours, the

16

Court respectfully recommends that there be a further discount for insufficient, vague, unsupported descriptions. Although Mr. Brecher's entries are too numerous to analyze individually, the Court's review demonstrates that many of the entries are vague and repetitive and do not contain sufficiently detailed descriptions for the Court to determine if the time spent was reasonable. For example, such entries as "Review transcripts" and "review deposition transcripts," appear multiple times in the time entries that Mr. Brecher has submitted.[20] (Ex. C). There are also a number of entries which qualify as block-billing, where counsel has listed numerous tasks in one block period of time, without a breakdown of the time spent on any individual task.[21] (See discussion, supra at 13-14). Indeed, the Court has counted entries that

---

[20]For example, the entry for February 19, 2008, includes, among other things, "review deposition transcripts." The entry for February 21, 2008, includes "review transcript of 2/8/08 deposition." On February 25, 2008, Mr. Brecher billed for "review depositions." Another cluster of similar descriptions appears at the end of April and throughout the month of May 2008. On April 30, Mr. Brecher's entry notes only "Review deposition transcripts." On May 7, 12, and 16, he billed for "Review transcripts." Again on May 23, he wrote "Review transcript of Shukla May 6, 2008 deposition;" on May 24, "Review Shukla transcript;" and on May 28, "Review transcript." These repetitive, nondescript entries continue on through December of 2008. After May 28, the Court counts at least 18 other entries, by Mr. Brecher alone, indicating a review of transcripts, without further explanation. (Ex. C).

[21]None of the time entries that list more than one task, which constitutes a majority of Mr. Brecher's entries, provides a breakdown of the time spent per task. Instead, all tasks are just listed together in one entry with a total hour allotment. The Court provides some examples: On January 15, 2008, Mr. Brecher billed 5.70 hours for "Deposition of plaintiff; telephone conference Veiitext; telephone conference Chaubey; letter to Chaubey; review documents for deposition." (Ex. C). On December 12, 2008, Mr. Brecher billed 2.90 hours for "Research case law; review transcripts for quotations; draft and revise notice of motion; review potential exhibits." (Id.) On January 5, 2009, he billed 5.20 hours for "Emails from/to Sat; review defendants' deposition transcripts; review case law; draft 56.1 statement." (Id.) It is impossible to determine from these vague descriptions whether the time spent was reasonable. Furthermore, in one entry, for February 22, 2008, the description of services performed includes the "review of notes of conversations, horoscopes, deposition materials." It is unclear whose "horoscope" was being reviewed or its relevance to the case. (Id. (emphasis added)).

17

contain as many as eight or nine individual tasks lumped together into one billing entry.[22] Taking into account the insufficient descriptions provided, the Court respectfully recommends that Mr. Brecher's hours be reduced by an additional 25%, for a total of 41.16 hours spent on the issue of spoliation. (See discussion, supra at 13-14).

### b. Time Entries with Partially Redacted Descriptions

In addition to the hours for which full descriptions have been provided, Mr. Brecher also billed 8.6 hours for which the descriptions have been partially redacted. (Ex. C). Those 8.6 hours have been discounted to 4.88 hours as described above (see supra at 11-12), and as detailed in Appendix A. Those hours must then be further discounted to 25%, as done above, to account for the spoliation focus, leaving the Court with 1.22 hours.

### c. Combined Total Hours

The Court therefore recommends that defendants be awarded fees based on 42.38 hours (41.16 + 1.22) of work performed by Mr. Brecher.

### 2. Kenneth C. Oh (KO)

Mr. Oh only appears to have performed services on this matter during the second billing time period, from September 2, 2008 through August 31, 2009. The Court calculates that a total of 12.4 hours were billed for Mr. Oh in seven different entries. (Ex. C). Having reviewed each

---

[22]For example, on January 14, 2008, Mr. Brecher billed 2.60 hours for the following: "Fax from Chaubey; telephone conference Chaubey's offices; telephone conference Sat; draft question for depositions; review court order; left message for Chaubey re: not received any return call; draft letter to court; prepare documents for deposition of plaintiff." (Ex. C). Also, on July 28, 2008, he billed 1.80 hours for all of the following:  "Prepare for deposition; travel to Courthouse; telephone conference secretary to Magistrate; efforts to reach Chaubey via cell phone; telephone conference Pria; emails re: May 14, 2005 documentation; telephone conference Chaubey; telephone conference Sat; prepare for conference with Magistrate. (Id.)

of the entries, it appears, based on the descriptions provided, that Mr. Oh mostly worked on preparing the papers in connection with defendants' Motion for Summary Judgment. The Court finds that Mr. Oh's billing entries have sufficiently specific descriptions and that the time listed for the assorted tasks seems reasonable. (Id.) Accordingly, the Court respectfully recommends that defendants' request for 25% of Mr. Oh's hours be granted. Thus, discounted for the approximate percentage of the Motion for Summary Judgment that focused on the spoliation issues, it is recommended that defendants be awarded fees for 3.1 hours of Mr. Oh's work.

### 3. Kimberly D. Reilly (KDR)

#### a. Time Entries with Complete Descriptions

Billing entries for Ms. Reilly, on the other hand, only appear within the first time period between November 26, 2007 and August 29, 2008. (Id.) The Court calculates that Ms. Reilly billed 14.3 hours for which the descriptions are completely visible. Adjusting those 14.3 hours to only those devoted to the spoliation issue, a 75% reduction, leaves the Court with 3.58 hours.

#### b. Time Entries with Partially Redacted Descriptions

In addition, Ms. Reilly billed 4.6 hours for which the descriptions have been partially redacted. (Id.) Those 4.6 hours have been discounted to 2.71 hours as described above, (see supra at 11-12) and as detailed in Appendix A. Taking into account the 75% reduction to account for only those hours devoted to the spoliation issue, these 2.71 hours should be further discounted to .68 hours.

#### c. Combined Total Hours

The Court declines to recommend any further reduction here, even though Ms. Reilly's billing entries each contain numerous tasks. Since the time billed in each entry was relatively

19

short, the Court finds that the tasks are sufficiently defined and the time spent was reasonable.

The Court therefore respectfully recommends that defendants be awarded fees for 4.26 hours (3.58 + .68) of work performed by Ms. Reilly.

### 4. Unknown Paralegal (EG)

As with Mr. Oh, the paralegal EG only appears to have performed work during the second time period from September 2, 2008 through August 31, 2009. According to the Court's calculation, EG billed 116.65 hours spread across 27 entries. (Ex. C). As noted above (see discussion supra at 12), many of EG's billing descriptions are overly vague and insufficiently detailed to determine if the time spent was reasonable. Included are descriptions such as "Drafted memo," as well as multiple, repetitive entries for "Research," "Research/draft motion," or for reviewing the motion, for several days in a row. There are a large number of hours that seem unreasonable, considering the lack of any specific description as to how the time was spent. At best, the descriptions for 10 of the 27 entries are sufficiently clear to determine that the hours billed for those services are reasonable.

Before discounting for these insufficiencies, the Court has discounted the total number of hours billed to account for the time spent on spoliation issues. After deducting that 75%, EG's hours amount to 29.16 hours. Then, because the Court finds that the EG billing descriptions are less informative than Mr. Brecher's, meriting more than the 25% reduction used for Brecher's hours, the Court recommends that only 37% of EG's hours be awarded, accounting for the 10 of the 27 entries that the Court considers to be sufficiently explained. In summary, it is respectfully recommended that defendants be awarded fees for 10.79 hours of EG's paralegal work.

20

### 5. Time Spent Preparing the Fee Application

Lastly, defendants seek additional fees for eight hours expended by Mr. Brecher in

preparing the fee application, for an additional award of $3,400. (Brecher Aff. ¶ 4). According

to counsel's affidavit, this time was:

> devoted to the review of my Firm's records, comparison of files,
> documents and Court records to distinguish significant other
> services of the Firm from those services delineated by the Court in
> its Report and Recommendations for this application for the award
> of fees and costs, and for the preparation and submission of this
> affidavit and exhibits related to and necessitated by Plaintiff's
> discovery failures.

(Id.) In a recent decision by the Second Circuit, the court reiterated the requirement that

attorneys provide contemporary time records: "Carey sets out unequivocally that absent unusual

circumstances attorneys are required to submit contemporaneous records with their fee

applications." Scott v. City of New York, 2010 WL 4869766, at *3. Since no other

documentation has been provided by the Firm relating to the hours spent preparing this fee

application, including who performed these tasks, the Court is justified in rejecting this request

outright. Id.; see also New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at

1147. Since Carey, there have been "few examples of [the Second Circuit] permitting a district

court to award fees in the absence of full contemporaneous records. Where [they] have allowed

for such a recovery, counsel has always maintained at least *some* contemporaneous records." Id.

at *3 (emphasis in original). In Scott, the Second Circuit held:

> While we can imagine rare circumstances where an award of fees
> might be warranted even in the total absence of contemporaneous
> records–such as where the records were consumed by fire or
> rendered irretrievable by a computer malfunction before counsel
> had an opportunity to prepare this application–the circumstances
> justifying such an exception would have to be found by the
> awarding court and laid out in sufficient detail to permit review of

the justification on appeal.

Id.

In light of the fact that defendants have not even provided "*some* contemporaneous records" for these eight hours of work by Mr. Brecher, defendants would need to provide an explanation for their inability to provide such records in order to be eligible to recover attorney's fees. Id. However, no explanation at all has been offered for counsel's failure to comply with the rules set out by the Second Circuit. Based on the Second Circuit's decision in Scott, without any factual basis, the Court cannot justify awarding any fees for these hours.

> Here, the district court did not make findings with respect to the facts justifying an exception. Although it determined that Puccio had no contemporaneous records–an omission that the court pointed out is "fatal" under *Carey*–it nevertheless decided to give him "the benefit of the doubt." The district court did not, however, attempt to explain *why* Puccio deserved the benefit of the doubt. . . . the district court's opinion sets out the proper standard, but declines–without explaining the factual basis for its decision–to apply it. . . . because the district court allowed for an exception, we must assume that it had in mind factors that provided the necessary justification. . . . We remand this case to the district court so that it may explain why in its view Puccio's circumstances warrant applying an exception to the general rule in *Carey*.

Id. at *4 (emphasis in original). Therefore, the Court respectfully recommends that defendant's request for fees for Mr. Brecher's completion of this fee application be denied.

### B. Reasonableness of Hourly Rate

Having determined the reasonable number of hours for which defendants can be compensated, the Court must now determine the reasonableness of counsel's requested rate of $425 per hour for each of the three lawyers involved and $100 per hour for the legal assistant/paralegal. See, e.g., Rotella v. Bd of Ed., 2002 WL 59106, at *6; see also Cruz v.

22

Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting

Blum v. Stenson, 465 U.S. at 896 n.11) (noting that the rates charged must be "'in line with those

[rates] prevailing in the community for similar services of lawyers of reasonably comparable

skill, experience, and reputation'"). The reasonable rate, in the absence of extenuating

circumstances, should be based on "the hourly rates employed in the district in which the

reviewing court sits." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir.

2009).

Traditionally, when asked to calculate a reasonable attorney's fee, courts first determined

a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter

by a reasonable hourly rate. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at

1159 (citing F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265); see also Hensley

v. Eckerhart, 461 U.S. at 433. However, the Second Circuit recently abandoned the use of the

term "lodestar" and suggested that district courts should calculate the "presumptively reasonable

fee" for an attorney's services by considering all of the case-specific variables that were

previously set out in Johnson v. Georgia Highway Express, Inc., to determine what a reasonable

client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v.

County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84, 189, 190 (2d Cir.

2008) (holding that "[t]he focus of the district courts is no longer on calculating a reasonable *fee*,

but rather on setting a reasonable hourly rate, taking account of all case-specific variables"); see

also Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9,

2008). The Johnson factors to be considered when determining a reasonable hourly rate for the

legal services performed are:

(1) the time and labor required; (2) the novelty and difficulty of the

23

> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time limitations
> imposed by the client or the circumstances; (8) the amount involved
> in the case and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability" of the case; (11)
> the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd.

of Elections, 522 F.3d at 187 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714,

717-19 (5th Cir. 1974)); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL

905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Moreover, the Second Circuit has indicated that courts may consider evidence of

prevailing rates for similar services beyond the fee application itself. See Chambles v. Masters,

Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989); Cruz v. Local Union No. 3

of Int'l Bhd. of Elec. Workers, 34 F.3d at 1160 (noting that the choice of rates is well within the

district court's discretion and that the court may consider its own experience and familiarity with

the case in setting the appropriate rate) (citation omitted).  However, "the burden is on the fee

applicant to produce satisfactory evidence – *in addition to the attorney's own affidavits* – that the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. at 896

n.11 (emphasis added).

Here, defendants' counsel has submitted no evidence to support his claim that $425 per

hour fee is a reasonable rate to be charged for each of the attorneys billing time in connection

with this matter.  Rather, counsel merely notes that his $425 per hour fee is discounted from his

usual fee of $625 per hour and that he believes his experience supports this fee. (Brecher Aff. ¶

3, 5). As already noted above (see <u>supra</u> at 6-7), defendants have requested attorneys' fees at this rate of $425 per hour for work performed by both Mr. Brecher and two other attorneys, Mr. Oh and Ms. Reilly, or "KDR" and "KO," respectively. (Ex. A).

However, counsel has not cited any support for the claim that this billing rate is consistent with rates generally charged in the Eastern District of New York for attorneys of this skill and experience. The Court notes that the "forum rule" requires that the Court abide by the presumptively reasonable fee employed in this district, which is substantially lower than in the Southern District of New York, where Mr. Brecher's office is located and where he has apparently served as a mediator for many years.[23] <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d at 172-74. (<u>See</u> Brecher Aff. ¶ 5; Ex. A).

Furthermore, assuming that Mr. Oh was a tenth or eleventh year associate and that Ms. Reilly was a fourth year associate (<u>see</u> <u>supra</u> at 6-7), there is no explanation provided for why they bill at the same rate as Mr. Brecher, the name partner and proprietor of the Firm. This lack of information, particularly as to Ms. Reilly, is troubling considering Mr. Brecher's claim that his fee is supported by his extensive experience (<u>see</u> Brecher Aff. ¶ 5); no reason has been given as to why a fourth year associate and a partner should be billing at the same rate. Thus, for the purposes of calculating the appropriate rates for these two associates, the Court has considered

---

[23]While the presumption in favor of applying the forum rule can be overcome in order to receive a higher, out-of-district, attorney's fee rate, to do so "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d at 175. However, since counsel has provided no support for his rate of $425, which is above the average rate in this district, this option is not available. <u>See</u> <u>Gutman v. Klein</u>, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (holding that rates of $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates are reasonable rates "within the Eastern District range").

25

Mr. Oh to be a senior associate and Ms. Reilly a junior associate. Similarly, because no educational or work experience information has been provided for EG, who was never identified by name, the Court recommends that EG's time be billed at the standard average rate charged for paralegals in this district.

In reviewing the requested rate of $425 per hour for Mr. Brecher and his associates, the Court notes that billing rates in this district vary widely depending on the nature and difficulty of the case and the experience of the attorneys involved. See Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc., 190 F. Supp. 2d 407, 426-29 (E.D.N.Y. 2002) (finding reasonable fees of $540 per hour for senior partners at Dewey Ballantine LLP; $312 to $449 per hour for other partners; and $273 per hour for associates in the context of tobacco litigation); Weil v. Long Island Savings Bank, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) (finding counsel's "customary rates" of $371 to $450 per senior partner to be justified in a consumer class action); Leibovitz v. New York City Transit Authority, No. 95 CV 3860, 1999 WL 167688, at *1 (E.D.N.Y. Feb. 25, 1999) (awarding a rate of $300 per hour to experienced attorney in employment discrimination litigation), rev'd on other grounds, 252 F.3d 179 (2d Cir. 2001); Rotella v. Bd. of Ed., 2002 WL 59106, at *2 (holding that the prevalent market rate in the Eastern District of New York is between $200 and $250 per hour for partners and between $100 to $200 per hour for junior and senior associates).[24]

---

[24]Similar rates have also been awarded in the Southern District. See, e.g., Irish v. City of New York, No. 98 CV 713, 2004 WL 444544, at *4 (S.D.N.Y. March 10, 2004) (awarding $250 per hour to lead counsel in employment discrimination action); M.L. ex rel M.P. v. Board of Educ., No. 02 CV 4288, 2003 WL 1057476, at *2-3, *3 n.1 (S.D.N.Y. March 10, 2003) (awarding fees of $350 to $375 per hour for lead counsel and $225 per hour for associates); Rodriguez ex rel Kelly v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (applying a rate of $425 per hour for the partner and $240 per hour for a fifth year associate in a civil rights action).

Most recently, cases have indicated that reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates.[25] Melnick v. Press, No. 06 CV 6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009); see also Gutman v. Klein, 2009 WL 3296072, at *2 (holding that rates of $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates are reasonable rates "within the Eastern District range"); Duverger v. C & C Duplicators, Inc., No. 08 CV 0721, 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009) (quoting Cruz v. Henry Modell & Co., 2008 WL 905351, at *7) (holding that "[o]verall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants," or paralegals). One recent case set a rate of $275 per hour where a partner had 25 years of experience and worked in a small firm of 10-12 people. GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, No. 04 CV 5300, 2009 WL 3241757, at *4 (E.D.N.Y. Sept. 30, 2009).

After reviewing the record discussed above and the relevant case law, the Court finds that the appropriate and reasonable hourly rates are as follows: $350 per hour for Mr. Brecher; $250 per hour for Mr. Oh; $150 per hour for Ms. Reilly; and $70 per hour for the paralegal EG.

Therefore, the Court respectfully recommends that fees be calculated as follows:

|  | Number of Hours | Hourly Rate | Total Amount Awarded |
|---|---|---|---|
| Mr. Brecher | 42.38 hours | $350/hour | $14,833 |
| Mr. Oh | 3.1 hours | $250/hour | $775 |

---

[25] In awarding fees, courts should use "current rather than historic hourly rates." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citing Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

27

| Ms. Reilly | 4.26 hours | $150/hour | $639 |
| EG | 10.79 hours | $70/hour | $755.30 |

In total, the Court respectfully recommends that defendants be awarded $17,002.30 in attorneys' fees as a sanction for plaintiff's spoliation of evidence.

## IV. Defendants' Application for Costs

In addition to attorneys' fees, defendants request reimbursement for certain costs attributable to plaintiff's discovery abuses. Defendants report costs of $9,608.34, of which they seek 25%, or $2,402.08. (Brecher Aff. ¶ 13).

This $9,608.34 figure, however, suffers from the same infirmity as defendants' request for fees: it includes charges that have very little, if any, supporting documentation or explanation. As stated above, the Court cannot base an award upon amounts requested where the requesting party has not provided adequate documentation. See Scott v. City of New York, 2010 WL 4869766, at *3; Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d at 53; New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1136. While counsel has included a breakdown of these costs, some with supporting invoices, many of the charges lack sufficient documentation to be included in defendants' application for costs. See F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265.

For example, the first page of Exhibit D to Mr. Brecher's Affidavit in Support of Award of Attorney's Fees and Costs is a list entitled "Disbursements" that includes no dates at all and simply has numerous repetitive entries with vague titles such as "Facsimilie," "Pacer," "Postage," "Duplication," "Meals," and "Transportation." (Ex. D at 1). These entries have

28

monetary amounts assigned to them but no indication of how many pages were faxed or

duplicated, or who was transported where, or more particularly, any information that would

enable the Court to determine that these costs were expended in connection with the spoliation

issue. (Id.) There are no invoices or receipts of any kind to support any of these expenditures

and no dates which would indicate if these costs were incurred during the relevant time periods.

The first page of Exhibit D, as described above, accounts for $2,016.74 of the costs sought by

defendants. Since there is absolutely no support for these costs, the Court recommends that no

award be made for these costs. See Scott v. City of New York, 2010 WL 4869766.

The remaining pages of Exhibit D consist mostly of invoices for court reporter services.

There is also one invoice for three hours of translation services in the amount of $150. The

Court notes that this invoice indicates that the case for which these services were rendered is

"Sharmaji v. Temple."[26] (Ex. D at 2). As no further information has been provided, the Court

cannot recommend reimbursement for this $150. (Id.) The rest of the invoices for court

reporting services all indicate that the services were rendered for this case, but no other

description or information is provided that would allow the Court to determine that the

translation services in this one invoice were even related to this case.

Based on a review of the Court's docket entries,[27] it appears that the court reporter

invoices for January 15, 2008 and January 16, 2008, as indicated by the minute entry for the

---

[26]While it is possible that "Sharmaji" refers to defendant Sharma and "Temple" refers to
the Ashram, it is not clear that these expenses relate to the instant lawsuit.

[27]As no other descriptions or information is provided by defendants regarding these
invoices, the only real information that the Court has to determine what the court reporters were
being utilized for are the dates on which the services were rendered and the information provided
on the ECF case docket sheet.

initial conference held on October 10, 2007, docket entry number 13, were for plaintiff's

deposition,[28] and thus arguably covered questions relating to the plaintiff's computer. Mr.

Brecher's January 23, 2009 letter to the Court, docketed as entry 16, indicates that plaintiff's

deposition was continued on February 8, 2008, suggesting that the court reporter's invoice for

February 22, 2008 was for that continued deposition of plaintiff.[29] (Ex. D).

Furthermore, entry number 18 on the docket sheet indicates that the March 17, 2008

charges are also for a continuation of the plaintiff's deposition. The invoice for April 1, 2008

also appear to be for plaintiff's deposition, as it lists Mr. Brecher's office as the location, with

Mr. Brecher as the deposing attorney. (Id.) There does not appear to be any explanation that the

Court can find in reference to the charges for April 14, 2008. The May 6, 2008 charges appear to

be for recording a telephone conference held with the Court regarding a deposition dispute.

Entry number 22 on the docket sheet, a letter by Mr. Brecher, dated May 27, 2008, indicates that

the deposition of plaintiff was continued on June 16, 2008, and an entry by the Court, number 23,

indicates that the plaintiff's deposition was to be completed by July 31, thereby presumably

explaining the July 28 charges. Lastly, the May 7, 2009 charge is for the oral argument on the

motion for summary judgment.

Assuming, therefore, that all of the charges, as just described, are for the plaintiff's

---

[28]Plaintiff objects to compensating defendants for any fees and costs incurred in connection with depositions, arguing that depositions are "conducted by the choice of the attorney and his clients." (Pl.'s Resp. ¶ 15). This argument ignores the fact that had plaintiff promptly produced the computer or documents contained therein, defendants' counsel would not have been forced to expend time during depositions exploring the circumstances behind plaintiff's continued noncompliance with this Court's discovery orders.

[29]In addition, the invoice indicates that the deposition was taken at defendants' counsel's office by Mr. Brecher, supporting the inference that the deposition was of the plaintiff.

deposition except for the final one, the court reporter fees for plaintiff's deposition testimony amount to $6,141.51.  (Id.)  The invoices add up to a total of $7,035.76, but the Court has subtracted the amount charged for April 14, 2008 ($894.25), as there is no explanation for this charge.  (Id.)  Counsel maintains that in awarding deposition costs, "a higher percentage than 25% of the costs would be just," even though defendants have nonetheless used "a similar analysis to that applied for fees" and have only requested 25% of their costs.  (Brecher Aff. ¶ 13).

However, having supervised discovery in this matter, the Court is aware that one of the reasons that plaintiff's deposition required multiple days of testimony is that there were problems with a number of the interpreters hired.  Thus, certain issues were revisited to ensure that plaintiff's responses were accurate in light of the difficulties experienced with the interpreters.  The Court has also reviewed the transcripts and recognizes that the deposition covered issues beyond the spoliated evidence.  Indeed, the Court concludes that defendants' request for 25% of the time spent deposing Mr. Shukla is unreasonable.  Without parsing through every page of the voluminous transcripts from those ten days of testimony, the Court respectfully recommends an award of 10% of the total costs of court reporters for plaintiff's deposition.  Therefore, of the $6,141.51 billed for the use of court reporters for plaintiff's deposition, the Court respectfully recommends an award of $614.15.

Furthermore, having reviewed the transcript from the oral argument on May 7, 2009, it is clear that less than 25% of the argument revolved around issues of spoliation.  The main discussion is limited to pages 40-44 of a 63 page transcript, with a few other mentions on select pages.  The Court estimates that approximately 10% of the oral argument therefore centered on the spoliation issue.  Therefore, of the $405.84 charged by the court reporter for the oral

argument (Ex. D), the Court recommends an award of $40.58.

Finally, defendants also request reimbursement for up to $1,500 for an interpreter fee. (Brecher Aff. ¶ 13). No documentation is provided for this fee for the translation services of Pria Bala at six of plaintiff's deposition sessions on and after February 22, 2008. Despite Mr. Brecher's statement that "I am informed the Defendants paid [these invoices] pursuant to email billings received from Ms. Bala," neither the emails nor records of payment have been furnished to the Court for review. (Id.) This assertion by Mr. Brecher alone is insufficient to warrant awarding the entirety of this fee, see Blum v. Stenson, 465 U.S. at 896 n.11 ("the burden is on the fee applicant to produce satisfactory evidence –*in addition to the attorney's own affidavits* . . . .") (emphasis added), particularly since the Court has already determined that only 10% of the deposition time related to the spoliation issue. Accordingly, the Court respectfully recommends that defendants' request for interpreter's fees be reduced by the same amount as the transcriptions costs, for an award of $150.

Therefore, in total, the Court respectfully recommends that defendants be awarded $804.73 (614.15 + 40.58 + 150) in costs.

## CONCLUSION

Accordingly, for the reasons stated above, the Court respectfully recommends that plaintiff be Ordered to pay attorneys' fees and costs to defendants in the amount of $17,807.03. This number represents $17,002.30 in attorneys' fees plus $804.73 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order.

See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
December _14_, 2010

Cheryl L. Pollak
United States Magistrate Judge

33

## Appendix A:  Partially Redacted Entries[30]

| Date | Person | Hours Claimed | Fees Claimed | Ratio Not Redacted | Adjusted Hours |
|---|---|---|---|---|---|
| 1/11/2008 | DB | 1.1 | $467.50 | 1/2 | .55 |
| 2/8/2008 | DB | 3.8 | $1,615 | 1/2 | 1.9 |
| 3/14/2008 | DB | .4 | $170 | 1/2 | .2 |
| 4/22/2008 | DB | .3 | $127.50 | 1/2 | .15 |
| 4/28/2008 | DB | .9 | $382.50 | 2/3 | .6 |
| 5/14/2008 | DB | .1 | $42.50 | 1/2 | .05 |
| 9/18/2008 | DB | .8 | $340 | 2/3 | .53 |
| 5/13/2009 | DB | 1.2 | $510 | 3/4 | .9 |
| Totals | DB | 8.6 | $3655 | | 4.88 |

| Date | Person | Hours Claimed | Fees Claimed | Ratio Not Redacted | Adjusted Hours |
|---|---|---|---|---|---|
| 12/14/2007 | KDR | .5 | $212.50 | 2/3 | .33 |
| 1/2/2008 | KDR | .1 | $42.50 | 1/2 | .05 |
| 1/11/2008 | KDR | 1.2 | $510 | 3/4 | .9 |
| 1/14/2008 | KDR | 2.6 | $1,105 | 1/2 | 1.3 |
| 1/14/2008 | KDR | .2 | $85 | 2/3 | .13 |
| Totals | KDR | 4.6 | $1,955 | | 2.71 |

---

[30](See Ex. C).

34