UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————X

**DEVENDRA SHUKLA,**

    **Plaintiff**

        vs.

**SAT PRAKASH SHARMA,**
**Individually and as Director**
**of Vishva Seva Ashram of New**
**York, GEETA SHARMA,**
**Individually and as director**
**of Vishva Seva Ashram of New**
**York, and VISHVA SEVA ASHRAM**
**OF NEW YORK, D/B/A Sarva Dev**
**Mandir.**

    **Defendants**

07-cv-02972 (CBA)(CLP)
DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO KRISHNAN
CHITTUR'S MOTION FOR
ATTORNEY'S FEES AND COURT
REPORTER COSTS
(28 U.S.C. § 1367)

———————————————————X

    NOW COME the defendants, Sat Prakash Sharma, Geeta Sharma, and Vishva Seva Ashram of New York, through counsel, and respectfully requests that this honorable Court deny Krishnan Chittur's motion for attorney's fees.  The Sharmas and Ashram respectfully submit that this Court lacks supplementary jurisdiction to hear the matter, there is no discretionary ancillary jurisdiction to hear the matter, and even if discretionary jurisdiction exists to hear the matter, that this Court should not exercise that discretion.

i

**TABLE OF CONTENTS**

I. THIS COURT LACKS SUPPLEMENTAL JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE MR. CHITTUR HAS NOT MET HIS BURDEN OF PROOF TO DEMONSTRATE THAT THIS COURT HAS JURISDICTION, THE FEE DISPUTE DOES NOT DERIVE FROM A "COMMON NUCLEUS OF OPERATIVE FACT" AS THE UNDERLYING FORCED LABOR ACTION, AND ADJUDICATING THE FEE DISPUTE IS NOT NECESSARY FOR THIS COURT TO FUNCTION PROPERLY AND ENFORCE ITS DECREES    1

    A. THE LEGAL STANDARD: SUPPLEMENTAL vs. ANCILLARY JURISDICTION, AND A "COMMON NUCLEUS OF OPERATIVE FACT"    1

    B. THIS COURT LACKS SUPPLEMENTAL JURISDICTION OVER MR. CHITTUR'S MOTION FOR ATTORNEY FEES BECAUSE MR. CHITTUR HAS IMPROPERLY FILED A MOTION RATHER THAN COMMENCING AN ACTION TO ASSERT HIS CLAIM, AND BECAUSE MR. CHITTUR HAS FAILED TO MEET HIS BURDEN TO SHOW THAT THIS COURT HAS JURISDICTION OVER THE MATTER    3

    C. THIS COURT LACKS SUPPLEMENTAL JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE IT DOES NOT DERIVE FROM A "COMMON NUCLEUS OF OPERATIVE FACT" AS THE UNDERLYING FORCED LABOR AND TRAFFICKING CLAIMS AND NOR IS ADJUDICATING MR. CHITTUR'S MOTION NECESSARY TO MANAGE THIS COURT'S PROCEEDINGS OR EFFECTUATE ITS DECREES    4

II. THIS COURT HAS NO DISCRETIONARY ANCILLARY JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE MANDATORY SUPPLEMENTAL JURISDICTION HAS REPLACED AND ELIMINATED DISCRETIONARY ANCILLARY JURISDICTION, AND, ALTERNATIVELY, IF SUCH DISCRETIONARY ANCILLARY JURISDICTION EXISTS, THE BETTER PART OF JUDICIAL DISCRETION COUNSELS AGAINST EXERCISING IT IN THIS CASE    11

    A. THERE IS NO DISCRETION TO EXERCISE ANCILLARY JURISDICTION OVER THE ATTORNEY'S FEE DISPUTE    11

    B. IN THE EVENT THIS COURT FINDS THAT DISCRETIONARY ANCILLARY JURISDICTION EXISTS, IT SHOULD NOT EXERCISE ITS DISCRETION TO HEAR THE ATTORNEY'S FEE DISPUTE BECAUSE THE COURT'S FAMILIARITY WITH THE RECORD WILL NOT PRESERVE JUDICIAL ECONOMY, DECLINING JURISDICTION WILL NOT DENY MR. CHITTUR A REMEDY, AND THIS COURT IS NOT A MORE CONVENIENT FORUM FOR THE PARTIES THAN OTHER COURTS HAVING PERSONAL AND SUBJECT-MATTER JURISDICTION    12

        C. MR. CHITTUR'S MOTION TO PAY THE COURT REPORTER SHOULD BE DENIED BECAUSE THAT INVOICE IS HIS RESPONSIBILITY UNDER LOCAL RULE 1.7                                    15

  III. CONCLUSION                                                     15

**I. THIS COURT LACKS SUPPLEMENTAL JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE MR. CHITTUR HAS NOT MET HIS BURDEN OF PROOF TO DEMONSTRATE THAT THIS COURT HAS JURISDICTION, THE FEE DISPUTE DOES NOT DERIVE FROM A "COMMON NUCLEUS OF OPERATIVE FACT" AS THE UNDERLYING FORCED LABOR ACTION, AND ADJUDICATING THE FEE DISPUTE IS NOT NECESSARY FOR THIS COURT TO FUNCTION PROPERLY AND ENFORCE ITS DECREES**

A. THE LEGAL STANDARD: SUPPLEMENTAL vs. ANCILLARY JURISDICTION, AND A "COMMON NUCLEUS OF OPERATIVE FACT"

Since "[f]ederal courts….possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree," Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citations omitted), a party asserting a claim must be able to point to some constitutional or statutory provision that grants a court jurisdiction to hear the claim.  The Judicial Improvements Act of 1990 allows a federal court to exercise its "supplemental jurisdiction" to hear a state law claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  A state law claim is part of the "same case or controversy" if it derives from the same "common nucleus of operative fact" as the underlying main action from which the court derives its original subject matter jurisdiction. E.g. Briarpatch Limited, L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (citations omitted).  The exercise of supplemental jurisdiction under § 1367 is mandatory unless one of the enumerated statutory exceptions applies.  Itar-Tass Russian News Agency v. Russian Kurier Inc., 140 F.3d 442, 447 (2d Cir. 1998).

In addition to "supplemental jurisdiction" under § 1367, a court may also have "ancillary jurisdiction" to hear certain claims related to the main one in the action.  "Ancillary

1

jurisdiction" "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Kokkonen, 511 U.S. at 378. Ancillary jurisdiction may be exercised for one of two purposes: "(1) to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id., at 379-80. In contrast to supplemental jurisdiction, which is statutory and codified in 28 U.S.C. § 1367, ancillary jurisdiction is part of a court's "inherent authority" to manage its proceedings, and not specifically codified anywhere. See id., at 380.

The relationship between ancillary and supplemental jurisdiction is a bit unclear after the Judicial Improvement Act of 1990. The Second Circuit has alternatively noted that § 1367 has "altered" the jurisdictional analysis, see Itar-Tass, 140 F.3d at 447 ("We now…hold that section 1367 has indeed altered *Gibbs'*[1] discretionary analysis"), while also describing § 1367 as a mere "codification of much of common law ancillary jurisdiction." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 336 (2d Cir. 2006). To the extent that ancillary jurisdiction is separate and distinct from supplemental jurisdiction under § 1367, it runs afoul of the Supreme Court's admonition that "[f]ederal courts….possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree," Kokkonen, 511 U.S. at 377. With the exception of § II, *infra*, the two prongs of ancillary jurisdiction-factual interdependence and the need to manage the

---

[1] The Second Circuit refers here to United Mine Workers of America vs. Gibbs, 383 U.S. 715 (1966), which governed the exercise of discretionary pendent and ancillary jurisdiction prior to § 1367.

2

court's proceedings and enforce its decrees-are thus considered as part of the "common nucleus of operative fact" supplemental jurisdiction inquiry for the purposes of this opposition to Mr. Chittur's motion for attorney's fees.

> B. THIS COURT LACKS SUPPLEMENTAL JURISDICTION OVER MR. CHITTUR'S MOTION FOR ATTORNEY FEES BECAUSE MR. CHITTUR HAS IMPROPERLY FILED A MOTION RATHER THAN COMMENCING AN ACTION TO ASSERT HIS CLAIM, AND BECAUSE MR. CHITTUR HAS FAILED TO MEET HIS BURDEN TO SHOW THAT THIS COURT HAS JURISDICTION OVER THE MATTER

Precisely because the jurisdiction of federal courts is limited, "[i]t is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen, 511 U.S. at 377. Mr. Chittur has failed to meet this burden of proof because he has not cited one single constitutional provision, statute, case, or other authority that would allow this Court to exercise supplementary jurisdiction over the fee dispute in this particular case.

Not only has Mr. Chittur failed to meet his burden to prove that this Court can exercise supplemental jurisdiction over his motion for attorney's fees, but he has also asserted his claim in an improper form, even if this Court does have jurisdiction, because "[s]upplemental jurisdiction is about claims, not 'motions.'" Myers v. Hertz Corp., 624 F.3d 537, 551 (2d Cir. 2010). Precisely because "supplemental jurisdiction is about claims, not 'motions,'" Mr. Chittur's motion for attorney's fees is an inappropriate method to assert his position. Rather, Mr. Chittur must either commence an action by filing a complaint with the Court pursuant to Fed. R. Civ. Pro. 3, or move to intervene in this action pursuant to Fed. R. Civ. Pro. 24. Given that Mr. Chittur has neither commenced an action nor moved

3

to intervene in this one, the exercise of supplemental jurisdiction over his motion for attorney's fees is not permitted because Mr. Chittur has made a motion and not asserted a claim.[2]

> C. THIS COURT LACKS SUPPLEMENTAL JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE IT DOES NOT DERIVE FROM A "COMMON NUCLEUS OF OPERATIVE FACT" AS THE UNDERLYING FORCED LABOR AND TRAFFICKING CLAIMS AND NOR IS ADJUDICATING MR. CHITTUR'S MOTION NECESSARY TO MANAGE THIS COURT'S PROCEEDINGS OR EFFECTUATE ITS DECREES

Even if Mr. Chittur had properly commenced an action, moved to intervene in this one, or if the Court construes his motion for attorney's fees as a motion to intervene,[3] this Court still

---

[2] Should this Court choose to construe Mr. Chittur's motion for attorney's fees as a complaint, then we respectfully request that this Court consider this opposition as a motion to dismiss that complaint for lack of subject-matter jurisdiction under Fed R. Civ. Pro. 12(b)(1). Moreover, to the extent that Mr. Chittur's motion functions as a complaint, Mr. Chittur has not met the pleading requirements for a complaint under Fed. R. Civ. Pro. 8(a). Specifically, Mr. Chittur's motion does not contain a "short and plain statement of the grounds for the court's jurisdiction," Fed. R. Civ. Pro. 8(a)(1), and nor does the motion contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2). Mr. Chittur has also not met the service requirements for a complaint under Fed. R. Civ. Pro. 4.

[3] Mr. Chittur does not meet the standard for either mandatory or permissive intervention. Intervention is mandatory when a federal statute provides an unconditional right to intervene or the moving party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. Pro. 24(a). No federal statute provides Mr. Chittur an "unconditional right to intervene," there is no property that is the subject of the action, Mr. Chittur has no interest in the "transaction that is the subject of the action" (i.e., the forced labor dispute), and disposing of this action without Mr. Chittur will not impair Mr. Chittur's ability to recover his attorney's fees in the slightest. Permissive intervention, meanwhile, is allowed where the movant is provided with a conditional right to intervene by statute or the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1). No federal statute gives Mr. Chittur a conditional right to intervene, and for the same reasons that Mr. Chittur's claim does not derive from a "common nucleus of operative fact" his claim does not have question of law or fact in common with the main action. See § (I)(C). Even if Mr. Chittur qualifies for intervention, he has failed to comply with the requirements that a motion

4

lacks supplemental jurisdiction to hear Mr. Chittur's motion for attorney's fees because the state attorney's fee dispute does not derive from a "common nucleus of operative fact" as the underlying federal forced labor claim. The underlying federal claim that provides this Court with original jurisdiction is plaintiff's claim that the Sharmas and Ashram are liable to him for forced labor under 18 U.S.C. § 1589 and trafficking under 18 U.S.C. § 1590. In order to determine these claims, this Court must resolve the following factual issues: (1) whether the Sharmas and Ashram knowingly obtained plaintiff's labor; (2) whether the Sharmas and Ashram employed force, physical restraint, abuse of the legal process, serious harm, and/or threats of any of the aforementioned to so obtain plaintiff's labor; (3) whether any alleged threats of serious harm were sufficiently serious to compel a reasonable person of plaintiff's background and circumstances to continue providing labor or services in order to avoid incurring that harm; and, (4) if (1)-(3) have been found, whether and how much the Sharmas' and Ashram's conduct damaged plaintiff. See 18 U.S.C. § 1589. Essentially, what the federal claim requires this Court to adjudicate is the relationship between the Sharmas and the plaintiff, and whether the Sharmas engaged in sufficiently threatening conduct to force the plaintiff to work for them against his will.

In contrast to the federal claim, which essentially requires this Court to adjudicate the relationship between the Sharmas and the plaintiff, Mr. Chittur's motion for attorneys fees requires the Court to examine an entirely different relationship, specifically the one between Mr. Chittur and the Sharmas. More specifically, Mr. Chittur's motion would require

---

to intervene be served concurrently with a complaint. See Fed. R. Civ. Pro. 24(c).

this Court to determine: (1) the nature of the contractual fee arrangement between Mr. Chittur and the Sharmas; (2) the quantity and quality of the service with which Mr. Chittur provided the Sharmas; (3) whether Mr. Chittur's bill accurately captures the quality and quantity of the services rendered; (4) whether Mr. Chittur's bill accurately captures the expenses for which he has billed the Sharmas; and, (5) whether the time and expenses for which Mr. Chittur billed the Sharmas and Ashram are reasonable.  These questions are completely separate and independent of the forced labor question, and thus Mr. Chittur's motion for attorney's fees falls outside of this Court's supplemental jurisdiction to hear state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Distinctions between this case and other cases where a court has exercised supplemental jurisdiction over an attorney's fee dispute demonstrate the lack of a "common nucleus of operative fact" between the underlying forced labor and trafficking claims and the attorney's fee dispute.  For example, the Second Circuit reversed the district court's decision not to hear an attorney's fee dispute under its supplemental jurisdiction in Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442 (2d Cir. 1998).  In Itar-Tass, it was the plaintiffs who had a fee dispute with their attorneys.  The underlying litigation in Itar-Tass was a copyright action, however, and the plaintiffs, as the prevailing party, were statutorily entitled to attorney's fees from the defendants. Thus the plaintiffs had already submitted to the court their attorneys' bills and invoices as part of the underlying claim. In this case, by contrast, Mr. Chittur had not yet submitted

6

such material, and has no basis for doing so, as part of the underlying litigation.  That is to say, unlike the copyright action at issue in Itar-Tass, for which the court was required to review and assess the attorney fees and bills, the forced labor dispute that is the basis for the Court's original jurisdiction in this matter does not require or even allow this Court to assess and award attorney's fees to Mr. Chittur, and Mr. Chittur's motion for attorney's fees therefore does not derive from a "common nucleus of operative fact" with the underlying forced labor dispute, in contrast to Itar-Tass, where assessment of attorney's fees was part and parcel of the main copyright action.

In contrast to Itar-Tass, Mr. Chittur's motion for attorney's fees is more analogous to the situation in Ashraf v. Jasper, 2010 WL 2990102 (S.D.N.Y., July 27 2010) (only the Westlaw citation is currently available), where the court declined to exercise jurisdiction over an attorney's fee dispute.  In Ashraf, a criminal defendant sought to have the district court adjudicate a fee and fraud dispute between himself and his attorney.  The court dismissed the defendant's claims, reasoning that "his state law claims sounding in fraud and contract are not factually or legally interdependent with his narcotics prosecution…they cannot affect the outcome of either, nor do they implicate Ashraf's constitutional rights." Ashraf, 2010 WL 2990102 at *1.  Similarly, Mr. Chittur's motion for attorney's fees, a state law claim sounding in contract, are not factually or legally interdependent with the forced labor or trafficking claims.  Adjudication of Mr. Chittur's motion for attorney fees cannot affect the outcome of the underlying litigation, and nor can it affect the substantive or procedural rights of the plaintiff or defendants vis-à-vis each other.

7

Just as the attorney fee dispute between Mr. Chittur and the Sharmas does not derive from a "common nucleus of operative fact" as the forced labor dispute, it is not necessary for this Court to adjudicate the fee dispute between Mr. Chittur and defendants to manage the underlying litigation or to effectuate its decrees. Courts have exercised ancillary jurisdiction to hear attorney's fee disputes as means to manage their proceedings and effectuate their decrees in one of two instances: Either (1) the attorney's fee dispute could result in a lien upon the judgment rendered; or, (2) it was necessary to resolve a fee dispute between a litigant and a withdrawing attorney because that dispute was holding up the underlying litigation. An example of (1), the dispute implicates a lien against a judgment awarded a litigant before the court, the Second Circuit in Alderman v. Pan Am World Airways, 169 F.3d 99 (2d Cir. 1999), upheld the district court's exercise of ancillary jurisdiction to hear a dispute for attorney's fees. In Alderman, however, the dispute was based upon a contingency fee retainer agreement entitling counsel to a percentage of the judgment that plaintiff was to recover, id., and the attorney's fee dispute thus went to the court's ability to "effectuate its decrees," specifically the judgment awarded plaintiff. By contrast, in this case, Mr. Chittur claims no interest, and in fact has no interest, in any decree or judgment of this court, and adjudicating the fee dispute between Mr. Chittur and the Sharmas is not necessary to effectuate any decree of this Court, which is in contrast to Alderman, where the fee arrangement and New York's statutory attorney fee lien law provided counsel with a direct interest in the judgment of the court.

The second situation in which courts exercise ancillary jurisdiction to "manage its proceedings," a fee dispute between a litigant and a withdrawing attorney is holding the litigation

8

hostage, is exemplified by Sado v. Ellis, 815 F.Supp. 761 (S.D.N.Y. Mar. 19, 1993). In Sado, an intervening party had a falling out with his attorney and fired him without cause. The intervener, however, sought the return of $5,000 that he had paid the attorney as a retainer because the intervener needed that money to acquire a new lawyer. The district court took jurisdiction of this fee dispute "[t]o put things back on track- the action being stalled over this issue." Sado, 815 F.Supp. at 762. As the Sado court noted, adjudicating the attorney's fees of a *withdrawing* attorney was "necessary to render complete justice." Id. (citing Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982). In contrast to Sado, the litigation here is not "stalled" because of this attorney's fee dispute: Mr. Chittur is no longer a "withdrawing" attorney. Rather, he has already been discharged, and the Sharmas do not need to recover a retainer from him to pay new counsel legal fees. Both parties are ready, willing, and able to proceed to the merits of the underlying litigation. To the extent that the attorney's fee dispute with Mr. Chittur is holding up this litigation, it is only because Mr. Chittur is consuming this Court's valuable time with his motions. Entertaining Mr. Chittur's motion for attorney's fees thus would not "enable [this] court to function successfully," Kokkonen, 511 U.S. at 379-380, as in Sado, but only delay the resolution of this case.

The Supreme Court's decision in Kokkonen demonstrates the extreme limits of the ancillary jurisdiction doctrine after the codification of §1367. In Kokkonen, the parties reached settlement agreement. Both parties then executed and signed a stipulated order of dismissal, which the district court endorsed, dismissing the case. Subsequently, the parties disagreed about plaintiff's obligation to return certain files to defendant under the settlement agreement. Defendant moved in

9

the district court to enforce the agreement, and the district court heard and granted the motion under its "inherent power to do so." The Supreme Court reversed on the basis that neither prong of ancillary jurisdiction was satisfied. With respect to the first prong, factual interdependence, the Court reasoned: "the facts underlying [defendant's] dismissed claim for breach of agency agreement[4] and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together." Kokkonen, 511 U.S. at 380. Similarly, the facts underlying the forced labor and trafficking disputes on the one hand and the fee dispute on the other have nothing to do with each other, and it is neither necessary nor efficient to adjudicate them as one.

With respect to the second prong of ancillary jurisdiction-the need to manage proceedings and enforce decrees-the Supreme Court reasoned that "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." Id. Certainly the settlement agreement that was the basis of the stipulated order of dismissal in Kokkonen was more closely related to the court's proceedings in that case than Mr. Chittur's motion for fees is here. To put this point another way, the alleged breach of the legal services contract between Mr. Chittur and the defendants in no way imperils this Court's ability to enforce any order or decree. This Court retains its full ability and authority to render complete justice between the parties, which are the plaintiff and the Sharmas and *not* Mr. Chittur, in this case without adjudicating Mr. Chittur's motion for attorney's fees.

---

[4] The breach of agency agreement was the main underlying litigation in Kokkonen.

10

**II. THIS COURT HAS NO DISCRETIONARY ANCILLARY JURISDICTION TO HEAR MR. CHITTUR'S MOTION FOR ATTORNEY'S FEES BECAUSE MANDATORY SUPPLEMENTAL JURISDICTION HAS REPLACED AND ELIMINATED DISCRETIONARY ANCILLARY JURISDICTION, AND, ALTERNATIVELY, IF SUCH DISCRETIONARY ANCILLARY JURISDICTION EXISTS, THE BETTER PART OF JUDICIAL DISCRETION COUNSELS AGAINST EXERCISING IT IN THIS CASE**

>   A. THERE IS NO DISCRETION TO EXERCISE ANCILLARY
>   JURISDICTION OVER THE ATTORNEY'S FEE DISPUTE

There are a number of reported cases prior to the Judicial Improvement Act of 1990 where a court exercised ancillary jurisdiction to hear fee disputes between attorneys and litigants. These cases, however, predate the Judicial Improvement Act of 1990, of which 28 U.S.C. § 1367 is a part. As discussed in § I(A), *supra*, the effect of § 1367 upon ancillary jurisdiction is a bit unclear. To the extent that ancillary jurisdiction remains a separate means of acquiring jurisdiction over a claim that is independent of § 1367's supplemental jurisdiction, it runs afoul of the Supreme Court's admonition in Kokkonen that "[f]ederal courts….possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree," Kokkonen, 511 U.S. at 377, because ancillary jurisdiction is not based upon any statute or constitutional provision. The mandatory nature of supplementary jurisdiction under § 1367 further supports the notion that its codification in the Judicial Improvement Act of 1990 completely replaced and/or eliminated ancillary jurisdiction because ancillary jurisdiction, as conceived prior to the codification of § 1367, was discretionary. See Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., 863 F.2d 251, 256 (2d Cir. 1988). Supplementary jurisdiction, by contrast, is mandatory under § 1367 unless the Court finds that certain, specific statutory exceptions apply. Itar-Tass, 140 F.3d at 447. The combined

11

effect of replacing "discretionary" with "mandatory" and Kokkonen's broad statement that all jurisdiction must be linked to statute or a constitutional provision is that discretionary ancillary jurisdiction, independent from § 1367's supplemental jurisdiction, no longer exists.

> B. IN THE EVENT THIS COURT FINDS THAT DISCRETIONARY ANCILLARY JURISDICTION EXISTS, IT SHOULD NOT EXERCISE ITS DISCRETION TO HEAR THE ATTORNEY'S FEE DISPUTE BECAUSE THE COURT'S FAMILIARITY WITH THE RECORD WILL NOT PRESERVE JUDICIAL ECONOMY, DECLINING JURISDICTION WILL NOT DENY MR. CHITTUR A REMEDY, AND THIS COURT IS NOT A MORE CONVENIENT FORUM FOR THE PARTIES THAN OTHER COURTS HAVING PERSONAL AND SUBJECT-MATTER JURISDICTION

Should this Court finds that is has discretion to exercise ancillary jurisdiction over Mr. Chittur's motion for attorney's fees, the better part of judicial discretion counsels against exercising that jurisdiction in this particular case. There are in general four factors that courts previously relied upon in determining whether they should exercise their discretionary ancillary jurisdiction to hear a fee dispute between an attorney and his or her client. First, familiarity with the record and underlying litigation, and whether that familiarity will help resolve the fee dispute while avoiding re-litigation of the record, is one factor that courts must assess. Second, courts have a responsibility to protect their own officers in matters such as fee disputes. Third, whether or not the particular forum is more or less convenient for the parties than alternative ones. And fourth, courts must look to whether judicial economy is better served by exercising or withholding ancillary jurisdiction over fee disputes. See Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., 863 F.2d 251, 256 (2d Cir. 1988). None of these factors counsel towards exercising discretionary ancillary jurisdiction, if it even exists at all, in this case.

12

With respect to the first and fourth factors, familiarity with the record and judicial economy, neither would be particularly served by entertaining Mr. Chittur's motion for attorney's fees. It is true that this Court observed Mr. Chittur's performance during trial and is therefore familiar with both the quality and quantity of Mr. Chittur's work *inside the courtroom*. The bulk of the fee dispute between Mr. Chittur and defendants, however, does not arise from the time Mr. Chittur spent inside the courtroom before this Court on this matter. Rather, the Sharmas and Ashram chiefly dispute the vastly inflated trial *preparation* bills and fees and expenses for which Mr. Chittur has billed them. With all due respect to this Court, nothing litigated before it in the underlying substantive action provides it with any special insight into how much time Mr. Chittur spent preparing for trial, whether the time for which the defendants were billed accurately reflects the time Mr. Chittur actually spent preparing for trial, and whether expenses claimed actually were incurred or are reasonable. The record of the underlying litigation is thus of little help in adjudicating this fee dispute, and nothing is saved in judicial economy by hearing the fee dispute in this particular Court because whether done here or elsewhere, the issues of Mr. Chittur's trial preparation time and the expenses for which he billed defendants will have to be litigated for the first time.

There are further reasons to think that adjudicating Mr. Chittur's motion for attorney's fees at this point in time will be more harmful than helpful to the preservation of judicial economy. Depending upon the outcome of the underlying forced labor dispute, the Sharmas and Ashram may assert a cause of action for malpractice against Mr. Chittur. The Sharmas have been unable to retain counsel at this point for such a lawsuit

13

because the underlying litigation has yet to be resolved. The dispute over attorney's fees will certainly form part of a malpractice lawsuit, which itself is dependent upon the outcome of this litigation. Adjudicating Mr. Chittur's motion for attorney fees now will thus result in duplication, rather than preservation, of judicial economy because even if the fee dispute is resolved here, Mr. Chittur's representation of the Sharmas in general, and the fee dispute in particular, will remain the subject of a malpractice lawsuit that cannot be instituted until the forced labor litigation is resolved.

The second factor, protecting officers of the court, is similarly unhelpful for Mr. Chittur. It is certainly true that this Court has an obligation to protect its officers. This Court, however, also has an obligation to protect the litigants before it from officers of the court who fail to live up to that title. More importantly, declining to exercise ancillary jurisdiction in this case will not deprive Mr. Chittur of "protection." There are other judicial forums available to "protect" Mr. Chittur's interests in his attorney's fees. Mr. Chittur will not be denied a remedy if this Court declines to hear his motion for attorney's fees. Finally, convenience of the parties does not favor this Court exercising ancillary jurisdiction over Mr. Chittur's motion for attorney's fees. "Convenience of the parties" usually refers to the geographic location in which a dispute will be adjudicated. See Cluett, 863 F.2d at 256 ("the convenience of the parties would be served equally well whether the case was litigated in California or New York."). To the extent that convenience is an issue, both Mr. Chittur and the Sharmas either reside or work within the boundaries of New York City, and New York City is the geographical locus of both the fee dispute and the contract. As such, any court likely to have personal and subject matter

14

jurisdiction over this fee dispute will likely be within New York City and thus no more or less convenient for litigants than this Court.

### C. MR. CHITTUR'S MOTION TO PAY THE COURT REPORTER SHOULD BE DENIED BECAUSE THAT INVOICE IS HIS RESPONSIBILITY UNDER LOCAL RULE 1.7

In addition to moving for his attorney fees and related costs, Mr. Chittur has also separately moved for this Court to compel the Sharmas and Ashram to directly pay the fees of the court reporter. As an initial matter, this Court should not order defendants to pay the fees of the court reporter because Mr. Chittur has improperly filed a letter rather than a motion to that effect. Substantively, Mr. Chittur's "motion" for the fees of the court reporter should be denied for two additional reasons. First, Local Rule 1.7(a) states that "Every attorney appearing in any proceeding who orders a transcript of any trial, hearing, or any other proceeding, is obligated to pay the cost thereof to the court reporters of the court upon rendition of the invoice." As the attorney who ordered the transcript, Mr. Chittur is therefore responsible for paying for it under Local Rule 1.7. Second, and more importantly, to the extent that the Sharmas may be responsible for the invoice as part of the fees and costs they may owe Mr. Chittur, this Court lacks jurisdiction over the matter for the same reasons that it lacks jurisdiction over the fee dispute as a whole. See § I(A)-(C), *supra*.

### III. CONCLUSION

Mr. Chittur's motion for attorney's fees should be denied because this Court lacks jurisdiction to hear the matter. The

15

jurisdiction of federal courts is limited to that granted by statute or constitutional provision. It is presumed that a cause of action lies outside that jurisdiction, and the party seeking to invoke the limited jurisdiction of a federal court thus has the burden to prove the contrary. Mr. Chittur has failed to meet his burden of proof to demonstrate that this Court has jurisdiction over the fee dispute because he has not, and cannot, point to any constitutional provision or statute granting this Court jurisdiction. This Court cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367 because the fee dispute does not derive from a "common nucleus of operative fact" as the underlying forced labor dispute, and adjudicating the fee dispute is not necessary to manage the Court's proceedings or effectuate its decrees. Similarly, this Court cannot exercise ancillary jurisdiction under its "inherent power" to manage its proceedings because that jurisdiction has been eliminated in the wake of the Judicial Improvement Act of 1990, which substituted mandatory supplemental jurisdiction for discretionary ancillary jurisdiction.

 To the extent that discretionary ancillary jurisdiction remains intact and independent of the codification of supplemental jurisdiction in § 1367, the Court should not exercise it. This Court should refrain from exercising ancillary jurisdiction, if it exists, because its familiarity with the record will not preserve judicial economy: The fee dispute derives mostly from out-of-court fees and expenses, which are not reflected in the record. Moreover, because the fee dispute may be a part of a later malpractice action, which itself cannot proceed until this underlying litigation is resolved, concerns about judicial economy suggest that any litigation over Mr. Chittur's fees should at a minimum wait until the resolution of this case. In addition, although courts

have a responsibility to protect their own officers in fee disputes, they also have an obligation to protect litigants from attorneys who have unreasonable billing practices. Furthermore, declining to hear Mr. Chittur's motion for attorney's fees will not deny him the "protection" of a court: There are other judicial forums in which he may more appropriately seek a remedy. Finally, this Court is no more or less convenient for these litigants than other courts within the boundaries of New York City that would have both personal and subject matter jurisdiction over the fee dispute. For these aforementioned reasons, we respectfully request that this Court deny Mr. Chittur's motion for attorney's fees.

As a final note, we respectfully request that should this Court find against the defendants on the jurisdictional matter, that this Court stay adjudication of the fee dispute until the underlying forced labor litigation is resolved and so that defendants may have time to retain separate counsel on the fee dispute.

Respectfully submitted,

/s/ Edward J. McQuat
Edward J. McQuat, Esq.
The Blanch Law Firm, P.C.
261 Madison Ave., 12th Floor
New York, NY 10016
Phone: (212) 736-3939
Fax: (212) 736-3910
EMcQuat@blanchpc.com
*Counsel for Defendants*

CC: Krishnan Chittur, Esq., and Sanjay Chaubey, Esq. (via ECF)